63 P.3d 1058

STATE of Arizona, Appellee,

v.

Jesse Ray BRONSON, Appellant.

No. 1 CA–CR 02–0186.

Court of Appeals of Arizona,
Division 1, Department E.

Feb. 25, 2003.

Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Diane Leigh Hunt, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, By Christopher V. Johns, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

SNOW, Judge.

¶ 1 Jesse Ray Bronson appeals his conviction and sentence for burglary. For the following reasons, we reverse his conviction and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On the evening of June 5, 2001, Bronson entered a Mervyn's department store, spent a few minutes inside, and then exited the store. Bronson re-entered the store a few minutes later with his friend, Eric Thomas, and spent time browsing at the jewelry counter before leaving the store again.

¶ 3 After another few minutes had passed, Bronson and Thomas again re-entered the store, returned to the jewelry counter, and Bronson put a woman's diamond ring on hold under the name "Johnson."[1] Both men again left the store. A short time later, the two men again entered the store and returned to the jewelry counter where another sales clerk was closing one of the registers and collecting the cash and credit card receipts in Mervyn's bank deposit bags.

¶ 4 Thomas walked behind the counter, pulled a sawed-off shotgun from under his clothing and pointed it at the clerk, threatening to kill her unless she gave him the money she was removing from the registers. During the robbery, Bronson did not speak or personally physically threaten the clerk. Thomas took the bank deposit bags, and he and Bronson left the store.

¶ 5 Bronson and Thomas left the scene in Bronson's vehicle, and were then involved in an accident that left Bronson's vehicle disabled in front of a residence near the scene of the accident. Bronson asked the homeowner to call both the police and a friend to pick them up, but Bronson and Thomas left the scene to find a pay phone when the homeowner was unable to reach the friend and the police had not yet arrived.

¶ 6 When the police did arrive, Bronson and Thomas had not returned. Assuming the vehicle was abandoned, a police officer and a crime scene technician looked inside for identifying information and found three empty Mervyn's bank deposit bags and three firearms, including a sawed-off shotgun.

¶ 7 Bronson was located and arrested a week later, and charged with armed robbery, burglary, and misconduct involving weapons. Both the armed robbery charge and the burglary charge were alleged to be dangerous crimes.

¶ 8 At his jury trial, Bronson's main defense was "mere presence," arguing that while he had entered Mervyn's to use the restroom, he had not known beforehand that Thomas planned to rob the store. The State called Thomas (still awaiting a formal sentencing hearing pursuant to a plea agreement) as a witness, but he refused to testify on the advice of his counsel.[2] The State then moved to introduce a redacted transcript of Thomas's pretrial interview with Bronson's counsel, contending that the transcript was admissible as a hearsay exception under either Arizona Rule of Evidence 804(b)(3) or Rule 804(b)(5) because Thomas was "unavailable."[3] The State argued that because de-

---

**1.** Bronson argued at trial that this was simply a clerical error made by the sales clerk mishearing "Bronson" as "Johnson."

**2.** Before Bronson's trial, Thomas pled guilty to armed robbery in exchange for a stipulated sentence of seven years.

**3.** Arizona Rule of Evidence 804(b)(3) defines statement against interest as:

fense counsel had conducted the interview, "[h]e had ample opportunity to ask any questions he might have wanted to ask on cross-examination."

¶ 9 Bronson objected to the transcript's admission, arguing that the statements should not be admitted under Rule 804(b)(3) or Rule 804(b)(5), that Thomas had attempted throughout the interview to shift guilt to Bronson, and that admission of the transcript violated his right to confrontation under the United States Constitution.

¶ 10 The trial court found Thomas to be unavailable and admitted the transcript as a statement against penal interest under Rule 804(b)(3) and as admissible hearsay under the residual exception in Rule 804(b)(5). The court allowed defense counsel to read a statement to the jury informing it that Thomas had entered a plea agreement, but refused to give defense counsel more time to review the transcript before it was read to the jury. Bronson was allowed to call Thomas's former girlfriend to rebut Thomas's statements in the transcript and the court admitted evidence of Thomas's prior felony conviction for theft.

¶ 11 At the close of evidence, the court dismissed the misconduct involving weapons charge, and allowed defense counsel to introduce a transcript of Thomas's change of plea hearing. The jury acquitted Bronson of the armed robbery charge, but found him guilty of burglary. The jury also found that the offense was dangerous.

¶ 12 The trial court subsequently sentenced Bronson to the presumptive seven and one half year prison term. Bronson timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article VI, Section 9 and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1), 13–4031 and 13–4033(A).

## DISCUSSION

¶ 13 Bronson contends that admission of the transcript of Thomas's pretrial interview denied Bronson's right to confrontation under the Sixth Amendment to the United States Constitution. The State disagrees, arguing that admission of the transcript did not violate the Confrontation Clause, and alternatively, that any error was harmless.

¶ 14 We review a trial court's ruling on the admissibility of hearsay evidence for an abuse of discretion. *State v. Valencia,* 186 Ariz. 493, 498, 924 P.2d 497, 502 (App. 1996). However, Confrontation Clause violations are reviewed *de novo. Lilly v. Virginia,* 527 U.S. 116, 136–37, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (When deciding if hearsay evidence violates the Confrontation Clause, "courts should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause.").

### I. Confrontation Clause Violation

¶ 15 The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Confrontation

---

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
Rule 804(b)(5) covers residual hearsay exceptions, stating:
Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of

trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Clause "ensure[s] that testimony of an out-of-court declarant may be given only where it is invested with 'particularized guarantees of trustworthiness.' " *State v. Bass,* 198 Ariz. 571, 580, ¶ 35, 12 P.3d 796, 805 (2000) (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

¶ 16 Like the hearsay rule, the Confrontation Clause operates to exclude out-of-court statements from admission at trial unless the statements fall within a firmly rooted hearsay exception. *Bass,* 198 Ariz. at 580, ¶ 36, 12 P.3d at 805; *see also State v. Wood,* 180 Ariz. 53, 64, 881 P.2d 1158, 1169 (1994). If the statements do not fall into a firmly rooted hearsay exception, "courts insist on particularized 'indicia of reliability.' " *Bass,* 198 Ariz. at 580, ¶ 36, 12 P.3d at 805 (quoting *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)).

## A. "Firmly Rooted" Hearsay Exceptions

¶ 17 Bronson relies on *Lilly,* 527 U.S. 116, 119 S.Ct. 1887, to argue that a statement against penal interest made by an accomplice is not a firmly rooted exception to the hearsay rule. The State contends that *Lilly* can be distinguished from the instant case. We disagree.

¶ 18 In *Lilly,* the defendant was involved in several robberies and a carjacking that resulted in the murder of the driver. *Id.* at 120, 119 S.Ct. 1887. The defendant's brother and the brother's roommate also participated in these crimes. After being taken into custody, each man was questioned separately. Lilly did not discuss the murder, but accused the other two men of forcing him to participate in the robberies. Lilly's brother and the brother's roommate gave different accounts of the crimes, but both told police that Lilly had committed the murder and "masterminded" the robberies. *Id.* at 121, 119 S.Ct. 1887.

¶ 19 At Lilly's trial, his brother invoked his Fifth Amendment right against self-incrimination and refused to testify. *Id.* Instead, the prosecution was allowed to introduce statements made by Lilly's brother to the police after his arrest. The court allowed the statements as declarations of an unavailable witness against penal interest and found that such a declaration against interest was sufficiently firmly rooted that the admission of the hearsay statements did not violate the Confrontation Clause. *Id.* Lilly was eventually convicted of nine charges, including capital murder.

¶ 20 On appeal, the Virginia Supreme Court affirmed Lilly's convictions and sentences, concluding that the defendant's brother's statements were properly admitted because they were "declarations of an unavailable witness against penal interest; that the statements' reliability was established by other evidence; and, therefore, that they fell within an exception to the Virginia hearsay rule." *Id.* at 122, 119 S.Ct. 1887. The court also held that a statement against penal interest did fall within a firmly rooted hearsay exception, and thus the statements did not violate the Confrontation Clause despite the questions as to the statement's credibility. *Id.* at 122–23, 119 S.Ct. 1887.

¶ 21 The Supreme Court granted certiorari and reversed the Virginia court's interpretation of the Confrontation Clause's requirements. The Court held that "a hearsay exception [is] firmly rooted if, in light of longstanding judicial and legislative experience, it rest[s][on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the substance of the constitutional protection." *Id.* at 126, 119 S.Ct. 1887 (internal citations omitted). In its analysis whether the exception to the hearsay rule was sufficiently strong to satisfy Confrontation Clause concerns, the Court also pointed out that in its other cases it had "consistently ... viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." *Lilly,* 527 U.S. at 133, 119 S.Ct.

1887 (internal citations omitted). Ultimately, a majority of the Court made clear that "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence." *Id.* at 134, 119 S.Ct. 1887; *see also id.* at 148, 119 S.Ct. 1887 (Rehnquist, C.J., concurring).

¶ 22 Bronson correctly relies on *Lilly* to support his argument that the "statement against penal interest by an accomplice" exception to the hearsay rule is not a firmly rooted exception for the purposes of the Confrontation Clause.

### B. Other Indicia of Reliability

¶ 23 Even if a hearsay statement does not fall into a firmly rooted hearsay exception, it can still be admitted without violation of the Confrontation Clause if it is "at least as reliable as evidence admitted under a firmly rooted hearsay exception." *State v. Luzanilla,* 179 Ariz. 391, 393–94, 880 P.2d 611, 613–14 (1994) (citation omitted). "In determining whether such guarantees exist, courts may not consider corroborating evidence, but must instead look to the totality of circumstances ... that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 394, 880 P.2d at 614 (internal citation omitted).

¶ 24 In *Lilly,* the Court found that statements made by an accomplice to establish the guilt of an alleged accomplice are "inherently unreliable." 527 U.S. at 131, 119 S.Ct. 1887. This finding was "premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination." *Id.* at 132, 119 S.Ct. 1887.

¶ 25 The State argues that *Lilly* does not apply to these facts, as Thomas's statements inculpated him in the robbery as well. While some of Thomas's statements were self-inculpatory, the vast majority of his statements placed the blame on Bronson.[4] In addition, despite the self-inculpatory nature of some of the statements, that fact does not rescue the interview as a whole from violating the Confrontation Clause. Even when an alleged accomplice actually testifies, "his confession that 'incriminates himself together with defendant ... ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses.'" *Id.* at 131, 119 S.Ct. 1887 (quoting *Crawford v. United States,* 212 U.S. 183, 204, 29 S.Ct. 260, 53 L.Ed. 465 (1909)).

¶ 26 The State also contends that the transcript of Thomas's interview was reliable because the statements were made in a neutral setting, they were not "carelessly uttered," and they were made "without experiencing any apparent physical or mental infirmities." However, these facts are not enough to overcome the unreliable characteristics of the interview. Thomas was speaking after entering a guilty plea but pending sentencing, and the statements were not given under oath. Thomas had a considerable interest in implicating Bronson and exonerating himself.

¶ 27 Additionally, the purpose of a pretrial interview is markedly different than the purpose of cross-examination. Pretrial interviews are conducted by asking open-ended questions as part of the discovery process. They are not conducted to test the accuracy or credibility of a witness. The transcript of the interview does not support the idea that Bronson's counsel approached the interview with the desire to discredit Thomas's character or show the inaccuracies of his statements. There was no way for the jury to independently determine Thomas's credibility based on a reading of a transcript of the interview.

---

**4.** For example, Thomas claimed that the robbery was Bronson's idea, that Bronson coerced Thomas into committing the robbery, that Bronson was armed, that Bronson gave Thomas the shotgun, that Bronson made the threatening statements to the sales clerk, that Bronson grabbed the bank deposit bags and ran out of the store, and that Bronson kept almost all the money stolen during the robbery.

¶ 28 Accordingly, because the transcript did not fall into a firmly rooted hearsay exception and because insufficient indicia of reliability exist to render the admission of the transcript into evidence constitutional, we find that Bronson's rights under the Confrontation Clause were violated.

## II. Harmless Error Analysis

¶ 29 The State argues that if the court erred in admitting Thomas's pretrial interview, that error was harmless. Bronson disagrees, arguing that face-to-face confrontation was critical to the defense presented at trial, that the elements of the burglary conviction were based on Thomas's interview, and that the State's case relied heavily on Thomas's statements.

¶ 30 Violation of the Confrontation Clause may be harmless error. *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). "The correct inquiry is whether, *assuming the damaging potential of the cross-examination were fully realized,* a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *State v. Salazar*, 182 Ariz. 604, 610, 898 P.2d 982, 988 (App.1995) (quoting *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431). "[E]rroneously admitted evidence is harmless in a criminal case only when the reviewing court is satisfied beyond a reasonable doubt that the error did not impact the verdict." *Bass*, 198 Ariz. at 580–81, ¶ 39, 12 P.3d at 805–06; *see State v. Fulminante*, 193 Ariz. 485, 500, ¶ 49, 975 P.2d 75, 90 (1999). Under such a test, we cannot conclude that the error here was harmless.

¶ 31 In this case, Thomas's testimony was critical to Bronson's "mere presence" defense at trial. The instruction given to the jury read "[t]he mere presence of a Defendant at the scene of a crime, together with knowledge a crime is being committed, is insufficient to establish guilt." Each eyewitness testified that Thomas was the individual he or she saw pull out the shotgun, threaten the clerk and grab the bank deposit bags. The State presented no direct evidence, aside from the transcript of Thomas's pretrial interview, that Bronson performed any action beyond being present during these events.

¶ 32 In addition, it appears that the elements of Bronson's burglary conviction were based upon Thomas's statements. Bronson was convicted of burglary in the first degree, meaning that the jury decided he had "enter[ed] or remain[ed] unlawfully in or on a nonresidential structure ... with the intent to commit any theft or any felony therein" while knowingly possessing a "deadly weapon or a dangerous instrument." A.R.S. §§ 13–1506 & 13–1508. The State points to the pictures captured on the store security videotape and that Bronson used a false name when placing a ring on hold as evidence of Bronson's involvement. However, Thomas's statements provided the only direct evidence that Bronson personally possessed a weapon. Accordingly, the other evidence offered by the State is insufficient to show that the improperly admitted hearsay evidence was merely superfluous. *See Bass,* 198 Ariz. at 582, ¶ 46, 12 P.3d at 807.

¶ 33 Finally, Bronson is correct in asserting that the transcript of Thomas's pretrial interview was heavily relied upon at trial. The witnesses to the armed robbery each testified that Bronson was present at the crime scene but did not do or say anything. Bronson's wife and Thomas's former girlfriend both testified that, to their knowledge, Bronson did not know that Thomas planned to commit a crime until the two were already inside Mervyn's.[5] Additionally, the State repeatedly referred to the transcript throughout trial, and in the State's closing argument, the prosecutor referred to the transcript of Thomas's interview at least ten times, including repeated instructions to "Think about Eric Thomas's statement[s]."

¶ 34 Finally, the State argues that because the jury acquitted Bronson on the

---

5. Thomas's former girlfriend testified that she had spoken with Thomas before the robbery took place and that he had told her he planned on committing the robbery and that Bronson was unaware the robbery was going to take place.

She further testified that when she spoke to Thomas after the robbery, he told her that Bronson was unarmed and protesting, "No, no, no, no" during the robbery.

**328**

armed robbery charge, it must accordingly have decided that Thomas's statements were not credible and thus any error was harmless. "Because a jury is free to credit or discredit testimony, we cannot guess what they believed, nor can we determine what a reasonable jury should have believed." *Bass,* 198 Ariz. at 582, ¶ 46, 12 P.3d at 807.

¶ 35 In order to find that the improperly admitted hearsay evidence constitutes harmless error, the State must show that the tainted evidence had no impact on the jury's verdict. *See, e.g., Bass,* 198 Ariz. at 582, ¶ 45, 12 P.3d at 807 (stating that cases in which improperly admitted evidence results in harmless error must have "a body of proof, firmly convincing on the essential facts, that the jury would have convicted even without the error."); *State v. Ives,* 187 Ariz. 102, 111–12, 927 P.2d 762, 771–72 (1996). The State has made no such showing here.

### CONCLUSION

¶ 36 Because Thomas's statements were repeatedly referred to by the State at trial, and because we cannot say beyond a reasonable doubt that the error in this case did not have an impact on the verdict, we reverse Bronson's conviction. We do so because the trial court's order allowing the admission of the transcript violated Bronson's constitutional rights.

CONCURRING: JON W. THOMPSON, and JOHN C. GEMMILL, Judges.