132 P.3d 311

**STATE of Arizona, Appellee,**

**v.**

**Corey Lamont KING, Appellant.**

**No. 1 CA–CR 04–0269.**

Court of Appeals of Arizona,
Division 1, Department D.

April 20, 2006.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Brent E. Graham, Phoenix, Attorneys for Appellant.

## OPINION

GEMMILL, Judge.

¶ 1 Corey Lamont King appeals his convictions and sentences on two counts of cruelty to animals and one count of interfering with judicial proceedings. King argues that his Confrontation Clause rights under the United States Constitution were violated when the trial court admitted recorded statements to a 9–1–1 operator and statements made to a police officer during an initial investigation. Applying principles from the United States Supreme Court opinion in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we conclude that King's convictions and sentences must be reversed and this matter remanded for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On March 2, 2003, T.S. made a 9–1–1 emergency call requesting that a police officer be dispatched to her home. When the 9–1–1 operator asked T.S. what was happening, she responded that she had a restraining order against a person who had just thrown two three-week-old puppies over her house. When the 9–1–1 operator asked where that person was, T.S. explained that he "just drove off" and that she didn't know where he was.

¶ 3 In further response to the 9–1–1 operator's questions, T.S. identified King by name, provided his date of birth, and described his clothes and his race. When asked questions regarding King's car, T.S. provided the model and color of the vehicle, stated that the windows were tinted, but said that she did not know the car's license plate number.

¶ 4 When the operator asked how long it had been since King left the house, T.S. responded, "He left maybe five minutes ago." When asked which direction he went and where King lived, T.S. stated that she did not know where King was staying or what direction he had gone, and she continued to express concern for the puppies.

¶ 5 Officer Perkins of the Phoenix Police Department was dispatched to T.S.'s home in response to the 9–1–1 call, arriving approximately five minutes later. Officer Perkins observed that T.S. was upset and had been crying. T.S. told the officer that earlier in the day she had received several phone calls from King on her cell phone while she was out running errands. She said she was afraid to return to her house alone in the

event King was there, so she had called her brother to meet her at her house. T.S. said that her brother arrived at her house less than a minute after she arrived.

¶ 6 T.S. reported that when she arrived at her house, King's vehicle was parked in her driveway and King was in the garage with her pit bull and the dog's seven puppies. T.S. parked across the street and remained in her car while her brother talked to King. T.S. slightly cracked her window and began yelling at King that if he took the puppies, she was going to call the police. King told her to go ahead and call the police and proceeded to pick up two puppies, one white puppy and one brown puppy. T.S. told the officer that when she saw King picking up the puppies she pulled her car to the other side of the street to block her driveway so that King could not back out. She saw King throw the white puppy over her house and then called 9–1–1. T.S. explained that when she looked back again at King, the brown puppy was also gone.[1]

¶ 7 Upon investigation, Officer Perkins found a dead brown puppy in T.S.'s back yard. He went to a neighbor's yard and found a dead white puppy. Officer Perkins estimated that each of the puppies had been thrown a distance of approximately 60 to 70 feet.

¶ 8 Michael C., a 12–year–old neighbor, testified that he was playing in his backyard at the time and heard a loud thump. He looked up and saw a little white dog lying in his backyard. He testified that the puppy's eyes were slightly open when he first saw it on the ground.

¶ 9 King was charged with two counts of cruelty to animals, Class 6 felonies, and one count of interfering with judicial proceedings by knowingly disobeying or resisting a lawful order, process, or other mandate of the Phoenix Municipal Court, a Class 1 misdemeanor. He was convicted on all three counts. The trial court suspended his sentences and placed King on probation for one year for violating the order of protection and two years for each count of cruelty to animals. The court ordered that all three terms of probation would be served concurrently.

¶ 10 On appeal, King claims the trial court violated his Sixth Amendment right to confront witnesses by admitting the hearsay statements of T.S. who was unavailable for trial and not subject to cross-examination. Because this issue is dispositive, we do not reach King's other arguments on appeal.

¶ 11 T.S. did not appear and testify at King's trial. During a trial conference, the prosecutor recounted to the court the steps he had taken to locate T.S. and make her available for trial. The trial court found the State had made reasonable efforts to secure T.S.'s attendance at trial and that she was therefore "unavailable" under Arizona Rule of Evidence ("Rule") 804(a)(5). The trial court ruled that the 9–1–1 tape and T.S.'s statements to Officer Perkins made within a few minutes of the event were admissible under the Rule 803(1) and Rule 803(2) exceptions to the hearsay rule for present sense impressions and excited utterances. The court also found that under Rule 804(b)(5), the statements were reliable and probative, and the general purpose of the evidence rules and the interests of justice would be served by admission of the statements.[2]

¶ 12 Because T.S. was unavailable to testify at trial and not subject to cross-examination, King claims that admission of T.S.'s statements violated his Sixth Amendment Confrontation Clause rights described by the Supreme Court in *Crawford.* The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

1. According to Officer Perkins' trial testimony, T.S. said she began to make the call after the first puppy was thrown over the house. On the 9–1–1 tape, T.S. told the 9–1–1 operator that King "just drove off" and that "[h]e left about five minutes ago."

2. The trial court did not have the benefit of guidance from *Crawford* when these rulings were made. Nonetheless, *Crawford* is applicable because King's convictions were not yet final when the opinion was issued. *See Griffith v. Kentucky,* 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (defining final as "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied").

against him." U.S. Const amend. VI. King specifically argues that T.S.'s statements are "testimonial" under *Crawford,* and as such, they are inadmissable because the defense never had an opportunity to cross-examine T.S. King also argues that erroneous admission of this evidence was not harmless because it constituted the "bulk of the evidence" against him.

### DID KING WAIVE HIS CONFRONTATION CLAUSE OBJECTION?

¶ 13 The State first contends that this issue is waived on appeal because King failed to object below to admission of the evidence on Confrontation Clause grounds. The record, however, indicates King's attorney argued that T.S.'s hearsay statements were unreliable and that he was unable to cross-examine her or question her about them because "she's not here to explain it." He added that "it is certainly a lot easier for prosecutors to get convictions if their witness can't be cross-examined."

¶ 14 Because King objected on the basis of hearsay and also on the basis that he would not be able to cross-examine T.S., his objections were sufficient to avoid waiver of his Confrontation Clause argument. *See Dias v. State,* 95 Nev. 710, 601 P.2d 706, 709 (1979) ("When a hearsay objection is lodged ... on the grounds that the declarant has not been made available at trial and, as a result, cannot be subjected to cross-examination, the policy of the confrontation clause is invoked equally with that of the hearsay rule."); *see also Jones v. State,* 31 Ark.App. 23, 786 S.W.2d 851, 852 (1990) ("In this instance appellant did make a timely objection on the basis that she would not be able to cross-examine [the declarant], who was not present at the hearing. We consider this objection adequate to raise the issue of the confrontation clause."); *State v. Martinez,* 122 N.M. 476, 927 P.2d 31, 35 (Ct.App.1996) (finding Confrontation Clause objection preserved even though counsel did not expressly mention it or the constitutional right to confront witnesses); *Brooks v. State,* 132 S.W.3d 702, 705 (Tex.Crim.App.2004) (concluding that appellant's objection, with its reference to the right to cross-examine the co-defendant, was sufficient to preserve Confrontation Clause issue for review).

### WERE THE STATEMENTS TESTIMONIAL UNDER *CRAWFORD?*

¶ 15 The State next argues that T.S.'s out-of-court statements were "nontestimonial" and that the trial court properly ruled the statements admissible as excited utterances. According to the State, the admission of these statements did not violate the Confrontation Clause under the principles set forth in *Crawford* even though T.S. was not subject to cross-examination.

¶ 16 Although this court ordinarily applies an abuse of discretion standard when reviewing a trial court's rulings on the admissibility of evidence under exceptions to the hearsay rule, we conduct a *de novo* review of challenges to admissibility under the Confrontation Clause. *State v. Bronson,* 204 Ariz. 321, 324, ¶ 14, 63 P.3d 1058, 1061 (App. 2003).

¶ 17 In *Crawford,* the United States Supreme Court considered whether the use of an unavailable witness's tape-recorded statement to a police officer violated the Confrontation Clause. 541 U.S. at 38, 124 S.Ct. 1354. The Court analyzed the established rule of *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), in which it held that an out-of-court statement of an unavailable witness is admissible if the statement bears "adequate indicia of reliability." *Crawford,* 541 U.S. at 42, 124 S.Ct. 1354. The Court noted that under *Roberts,* such indicia of reliability is satisfied when the evidence either "falls within a firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Id.* (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531).

¶ 18 Concluding that the "reliability" factors in *Roberts* were "unpredictable and inconsistent," *Crawford,* 541 U.S. at 66, 124 S.Ct. 1354, the Supreme Court reasoned that "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to

amorphous notions of 'reliability.'" *Id.* at 61, 124 S.Ct. 1354. The Court further explained:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. *Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.*

*Id.* at 68, 124 S.Ct. 1354 (emphasis added).

¶ 19 The Supreme Court in *Crawford* emphasized that the Confrontation Clause is directed primarily to testimonial hearsay statements. *Id.* at 53, 124 S.Ct. 1354. Although not defining the term "testimonial," the Court identified three "formulations of [the] core class of 'testimonial' statements." *Id.* at 51, 124 S.Ct. 1354. The first formulation includes "*ex parte* in-court testimony or its functional equivalent- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* (quoting Brief for Petitioner at 23). The second formulation includes "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions." *Id.* at 51–52, 124 S.Ct. 1354 (quoting *White v. Illinois,* 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., concurring in part and concurring in the judgment)). The third formulation includes "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52, 124 S.Ct. 1354 (quoting Brief for Nat'l Ass'n of Crim. Defense Lawyers et. al. as Amici Curiae at 3). The Court also included "[s]tatements taken by police officers in the course of interrogations" as testimonial. *Id.*[3] The Court indicated that the formulations all shared a "common nucleus." *Id.*

¶ 20 We perceive that a key aspect of the "common nucleus" in these formulations is the reasonable expectation of the declarant. "It is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance, from the true testimonial statement." *United States v. Summers,* 414 F.3d 1287, 1302 (10th Cir.2005). Several courts have focused on the reasonable expectation of the declarant. *See id.* at 1302 ("Certain factual circumstances surrounding an out-of-court statement give rise to just such an expectation, including formalized settings such as police interrogations, confessions, or the taking of statements under oath."); *United States v. Cromer,* 389 F.3d 662, 675 (6th Cir.2004) (determining that "[t]he proper inquiry, then, is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."); *United States v. Hendricks,* 395 F.3d 173, 181 (3d Cir.2005) (determining that intercepted statements between defendants and other third parties were not testimonial as the declarants did not make the statements in the belief that they might be used at a later trial); *United States v. Saget,* 377 F.3d 223, 228 (2d Cir.2004) (noting that "*Crawford* at least suggests that the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at trial"); *Commonwealth v. Gonsalves,* 445 Mass. 1, 833 N.E.2d 549, 557–58 (2005) (focusing on the declarant's intent by evaluating the specific circumstances in which the out-of-court statement was made and adopting the approach that "[t]he proper inquiry is whether a reasonable person in the declarant's position would anticipate the statement's being used against the accused in investigating and prosecuting a crime"). *But see Hammon v.*

3. The Court in *Crawford* further stated that "[w]e use the term 'interrogation' in its colloquial, rather than any technical legal, sense. Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation.'" *Id.* at 53 n. 4, 124 S.Ct. 1354 (citation omitted).

*State,* 829 N.E.2d 444 (Ind.2005) (concluding "that the common denominator underlying the Supreme Court's discussion of what constitutes a 'testimonial' statement is the official and formal quality of such a statement." (quoting *Hammon v. State,* 809 N.E.2d 945, 952 (Ind.Ct.App.2004))), *cert. granted,* — U.S. —, 126 S.Ct. 552, 163 L.Ed.2d 459 (2005).

¶ 21 The Tenth Circuit Court of Appeals has specifically formulated an objective test of reasonable expectations to help determine when statements are testimonial: "Rather, we believe an objective test focusing on the reasonable expectations of the declarant under the circumstances of the case more adequately safeguards the accused's confrontation right and more closely reflects the concerns underpinning the Sixth Amendment." *Summers,* 414 F.3d at 1302. We agree that a primary factor in determining if a hearsay statement is testimonial is whether "a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Id.*

¶ 22 The State contends that excited utterances by definition can never be deemed testimonial because the underlying rationale for their admission is spontaneity. In *State v. Parks,* 211 Ariz. 19, 116 P.3d 631 (App. 2005) (review granted November 29, 2005), however, this court recently rejected this argument and held that "depending on the circumstances, some excited utterances will be testimonial, others will not." *Id.* at 28, ¶ 41, 116 P.3d at 640.[4] We agree that the mere fact that statements may be considered excited utterances does not automatically remove them from Confrontation Clause analysis.

¶ 23 We turn now to the specific question we must decide: whether T.S.'s out-of-court statements were "testimonial" and therefore subject to Confrontation Clause protections.

**The 9–1–1 Call**

¶ 24 King contends that T.S.'s statements to the 9–1–1 operator were testimonial. Specifically, King argues that because the 9–1–1 operator's questions were meant to obtain investigative information, the operator's questions constituted "interrogation" under *Crawford.* In response, the State argues that the purpose of T.S.'s 9–1–1 call was to plead for help in a dangerous situation, not to prosecute King. In addition to considering the reasonable expectations of the declarant, we also derive useful principles from several out-of-state cases that address whether statements made during a 9–1–1 call may qualify as testimonial under *Crawford.*

¶ 25 In *People v. Moscat,* 3 Misc.3d 739, 777 N.Y.S.2d 875, 879 (N.Y.Crim.Ct.2004), the court held that "[a] 9–1–1 call for help is essentially different in nature than the 'testimonial' materials that *Crawford* tells us the Confrontation Clause was designed to exclude." In so holding, the court observed that a 9–1–1 call "is generated not by the desire of the prosecution or the police to seek evidence against a particular suspect; rather, the 9–1–1 call has its genesis in the urgent desire of a citizen to be rescued from immediate peril." *Id.* Furthermore, an injured person "is not contemplating being a 'witness' in future legal proceedings; she is usually trying simply to save her own life." *Id.* at 880. Therefore, because 9–1–1 calls are primarily "loud cr[ies] for help," the court concluded that they do not fall within the *Crawford* meaning of testimonial. *Id.*

¶ 26 Similarly, the Supreme Court of Washington in *State v. Davis,* 154 Wash.2d 291, 111 P.3d 844, 849, *cert. granted,* — U.S. —, 126 S.Ct. 547, 163 L.Ed.2d 458 (2005), decided that, in general, "an emergency 9–1–1 call is not of the same nature as an in-custody interrogation by police." There, a domestic violence victim, "hysterical and crying," told the 9–1–1 operator that she had

4. In *Parks,* we acknowledged that "a statement may be testimonial under *Crawford* if the declarant would reasonably expect it to be used prosecutorially or if it [were] made under circumstances that would lead an objective witness reasonably to believe the statement would be available for use at a later trial." *Id.* at 27, ¶ 36, 116 P.3d at 639. "While a declarant's emotional state may temporarily 'still' reflection, such a declarant may nevertheless reasonably appreciate or expect that his statement will have an impact on whether an arrest is made, charges are brought or guilt is attributed." *Id.* (citation omitted).

been attacked. *Id.* at 846. In response to the operator's questions, she named her assailant and explained that "he had left the residence moments earlier." *Id.* In reaching its holding, the court noted that while a 9–1–1 call "involves personnel associated with the police, the 9–1–1 operator is not a police officer" and the call "is typically initiated by the victim." *Id.* at 849. It further stated that the purpose of the call is generally not to "bear witness," but is rather to seek help. *Id.* The court explained:

> In most cases, one who calls 9–1–1 for emergency help is not "bearing witness," whereas calls made to the police simply to report a crime may conceivably be considered testimonial. It is necessary to look at the circumstances of the 9–1–1 call in each case to determine whether the declarant knowingly provided the functional equivalent of testimony to a government agent.

*Id.* at 850.

¶ 27 Additionally, in *People v. Cortes,* 4 Misc.3d 575, 781 N.Y.S.2d 401, 415 (N.Y.Sup. Ct.2004), the court held that 9–1–1 calls made *for the purpose of reporting a crime* are testimonial because "an objective reasonable person knows that when he or she reports a crime the statement will be used in an investigation and at proceedings relating to a prosecution." There, the 9–1–1 caller reported a crime in progress. In response to the 9–1–1 operator's questions, the caller provided a physical description of the assailant. In reaching its conclusion, the court noted that law enforcement agencies have made the general public aware of the kind of information needed when reporting a crime. *Id.* at 405. Thus, when 9–1–1 calls are made for this purpose, the callers are providing this information either on their own initiative or in response to the 9–1–1 operator's questions. *Id.* at 406. Therefore, either the purpose of the call is to invoke "police action and the prosecutorial process," *id.* at 416, or the statements are the product of interrogation. *Id.* at 406. The court thus concluded that 9–1–1 calls made for the purpose of reporting a crime qualify as testimonial.

■ ¶ 28 We derive three principles from these cases. First, as recognized in *Davis,* 9–1–1 calls must be analyzed on a case-by-case basis to determine whether the statements made during the call qualify as testimonial. *See also People v. West,* 355 Ill. App.3d 28, 291 Ill.Dec. 72, 823 N.E.2d 82, 91 (2005) (setting forth guidelines for determining "on a case-by-case basis" whether a 9–1–1 call is testimonial).

■ ¶ 29 Second, 9–1–1 calls that are primarily "loud cries for help" are nontestimonial. These nontestimonial statements are usually made in the context of immediate danger either from physical injury or threat of injury or harm. As described in *Moscat,* "[t]ypically, a woman who calls 9–1–1 for help because she has just been stabbed or shot is not contemplating being a 'witness' in future legal proceedings; she is usually trying simply to save her own life." 777 N.Y.S.2d at 880. In general, if the purpose of the call is to seek assistance regarding an ongoing or threatened emergency, the call qualifies as a "loud cry for help." *See id; see also Pitts v. State,* 272 Ga.App. 182, 612 S.E.2d 1, 5 (2005) (finding that 9–1–1 calls made "for the purpose of preventing or stopping a crime as it was actually occurring" were nontestimonial). In such cases, it cannot be said that the caller would reasonably expect his statements to be used prosecutorially nor that the 9–1–1 operator is primarily gathering evidence for an investigation and prosecution.

■ ¶ 30 Third, 9–1–1 calls that are made for the primary purpose of identifying a suspect or reporting evidence in an alleged crime that has already occurred will usually be testimonial. *See West,* 291 Ill.Dec. 72, 823 N.E.2d at 91 (holding that statements made during a 9–1–1 call that are "volunteered for the purpose of initiating police action or criminal prosecution ... [are] testimonial in nature because an objective individual would reasonably believe that when he or she reports a crime they are 'bearing witness' and that their statement will be available for use at future criminal proceedings"); *People v. Dobbin,* 6 Misc.3d 892, 897, 791 N.Y.S.2d 897 (N.Y.Sup.Ct.2004) (stating that "[t]he very act of reporting a crime, that is, making a formal statement to government officers, would lead an objective witness to understand that she or he has become involved in

an official police investigation and that her or his formal statement could be used for prosecution, including trial"); *State v. Powers,* 124 Wash.App. 92, 99 P.3d 1262, 1266 (2004) (finding statements made during 9–1–1 call testimonial because caller was not in immediate peril and primary purpose was to report defendant's whereabouts, description, and violation of an earlier court order). Such calls are a form of accusation that may be used against the suspect, similar to a statement identifying a suspect to a police officer at the scene of a crime.

¶ 31 We have considered these principles and in particular the distinction between 9–1–1 calls that are "loud cries for help" compared to 9–1–1 calls that are reports of completed crimes. We have also considered the trial court's finding that T.S. was upset and in an excited state of mind during at least part of the 9–1–1 call. Under these circumstances and because the trial court did not have the benefit of *Crawford* when considering the admissibility of these statements, we believe it is best to remand to allow the trial court, in the first instance, to make appropriate factual determinations pertinent to an application of these principles.

¶ 32 On remand the trial court may consider whether portions of the 9–1–1 call may be admissible. A 9–1–1 call may include both nontestimonial and testimonial content and may require a trial court to evaluate the statements separately rather than as a whole. *See Williamson v. United States,* 512 U.S. 594, 601, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994) (rejecting the whole statement approach in the context of confessions). The trial court in this instance may consider such factors as: T.S.'s emotional state during the 9–1–1 call; the objectively reasonable expectations of a person in T.S.'s position; whether the primary purpose of each portion of the 9–1–1 call was to seek protection from a dangerous situation or to report the conduct of King after the fact; and any other factor bearing on whether particular statements were testimonial.

**Statements Made to Officer Perkins at the Crime Scene**

¶ 33 King also contends that T.S.'s statements to Officer Perkins at the crime scene were the product of interrogation, testimonial in nature, and admitted into evidence in violation of the Confrontation Clause. In response, the State cites cases from other jurisdictions that have held that preliminary field investigations conducted at a crime scene shortly after a crime is committed are not "police interrogations" as contemplated by *Crawford,* are not testimonial, and may be properly admitted without violating the Confrontation Clause.

¶ 34 This court in *Parks* recently addressed this specific issue and rejected the State's argument. 211 Ariz. at 28, ¶ 43, 116 P.3d at 640. After adopting a totality-of-the-circumstances approach to determining whether out-of-court statements are the product of a police interrogation, this court determined that "an interrogation, as that term is used in *Crawford,* does not turn on whether police questioning occurred during a field investigation or can be labeled formal or structured." *Id.* at 29, ¶ 46, 116 P.3d at 641. Moreover, we explained:

> Questioning during a field investigation when there are no "exigent safety, security, and medical concerns" that has as its objective the production of evidence or information for a possible prosecution, is within the core concerns of the Sixth Amendment just as is a formal witness interview at a station house.

*Id.* at 29–30, ¶ 49, 116 P.3d at 641–42. This court also noted that "whether an interrogation has taken place does not exclude the other formulations of a testimonial statement recognized in *Crawford.*" *Id.* at 30, ¶ 50, 116 P.3d at 642. Thus, "pretrial statements that declarants would reasonably expect to be used prosecutorially" are testimonial regardless of whether an interrogation has occurred. *Id.* (quoting *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354).

¶ 35 We conclude that T.S.'s statements to Officer Perkins were testimonial in nature and purpose, and we need not address whether they were the product of an interrogation. A reasonable person in T.S.'s position would expect the government to use her statements in the investigation and prosecu-

tion of the perpetrator. Therefore, T.S.'s statements to Officer Perkins were testimonial, and their admission at trial violated King's Sixth Amendment right to confrontation.

### Harmless Error Analysis

¶ 36 Confrontation Clause violations are subject to harmless error analysis. *Bronson,* 204 Ariz. at 327, ¶ 30, 63 P.3d at 1064. We have determined that T.S.'s statements to Officer Perkins were testimonial and should not have been admitted into evidence. In addition, the trial court on remand may determine that part or all of T.S.'s statements on the 9–1–1 tape are testimonial and must similarly be excluded. These statements by T.S. during the 9–1–1 call and to Officer Perkins constituted the primary evidence against King. T.S. did not testify at trial, nor did her brother, and we cannot say beyond a reasonable doubt that the jury would have reached the same result if these hearsay statements had not been admitted.

### CONCLUSION

¶ 37 T.S.'s statements to Officer Perkins were testimonial under *Crawford* and were admitted in violation of the Confrontation Clause. Additionally, part or all of T.S.'s statements during the 9–1–1 call may be testimonial under *Crawford.* For these reasons, we reverse King's convictions and sentences and remand for further proceedings consistent with this opinion.[5]

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and G. MURRAY SNOW, Judge.

5. We recognize that application of the expanded right of confrontation announced in *Crawford* may produce unjust results if the victim or any witness is unavailable due to intimidation or criminal conduct by the alleged perpetrator. At the sentencing hearing in this case, the trial court expressed the concern that T.S. had been induced into unavailability by King. We note that courts recognize a forfeiture-by-wrongdoing analysis by which a trial court may find that a defendant has forfeited his right of confrontation if the State establishes that the defendant procured or induced the unavailability of the witness. *See Crawford,* 541 U.S. at 62, 124 S.Ct. 1354; *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878); *State v. Valencia,* 186 Ariz. 493, 924 P.2d 497 (App.1996).