NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE ISMAEL N.

No. 1 CA-JV 16-0331
FILED 5-16-17

Appeal from the Superior Court in Maricopa County
No. JV200684
The Honorable Monica S. Garfinkel, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Preciado Law Firm PLC, Phoenix
By Stephanie Preciado
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Amanda M. Parker
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

**D O W N I E**, Judge:

**¶1**        Ismael N. appeals from an order adjudicating him delinquent.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Officer Jensen responded to a 911 call about "a reckless driver for a red Honda vehicle."  He saw a red Honda Accord, with five juveniles standing nearby.  The Honda was running, the hood was up, and the juveniles were pouring water from a hose over the engine.  The vehicle had extensive damage.  The juveniles began walking away when the officer exited his patrol vehicle but returned after he gave "two to three" commands.  Meanwhile, Officer Jensen received confirmation that the Honda had been reported stolen.  He directed the juveniles to sit on the curb, and they were individually interviewed when additional officers arrived.  Photos of the Honda's interior depicted a flat-head screwdriver and a metal file in the front console, as well as a gash in the ignition where the key slot would normally be.

**¶3**        In a recorded interview, Ismael stated that the Honda was a "G-rip" — a stolen vehicle — and that his friend had picked him up in it a few days earlier.  Ismael also admitted driving the vehicle and seeing another juvenile start it with a flat-head screwdriver.  None of the juveniles possessed a key to the Honda.

**¶4**        Ismael was charged with theft of means of transportation, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1814.  After an adjudication hearing, the juvenile court found that the State had proven the charge beyond a reasonable doubt and adjudicated Ismael delinquent.  This timely appeal followed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

## DISCUSSION

**¶5**        Ismael contends the court erred by admitting certain evidence, and he also raises a Confrontation Clause challenge to admission of the recorded 911 call.  We review the admission of evidence for an abuse of discretion, but we consider Confrontation Clause challenges *de novo*.  *State v. King*, 212 Ariz. 372, 375, ¶ 16 (App. 2006).

## I.      Preclusion of Evidence

**¶6**          Ismael contends the juvenile court should have granted his oral motion to preclude his recorded statement, photographs taken by the police, and the 911 call based on the State's purported violation of disclosure obligations imposed by Arizona Rule of Criminal Procedure 15.8(a).  We disagree.

**¶7**          On June 8, 2016, the State filed a disclosure statement, listing as exhibits "Recorded Interviews," "Photos," and "911 radio calls," as well as eight other generic categories of exhibits to be used at trial.[1]   The disclosure statement advised that "[t]his evidence is available for your review upon your request."   At the adjudication hearing, defense counsel asserted he was unable to review the evidence until the preceding day, though he acknowledged receiving an email from the prosecutor on July 22 stating that the evidence was available.  Counsel explained "it was part of my failure to pick it up," but nevertheless contended the State had violated its disclosure obligations.

**¶8**          Rule 16 of the Rules of Procedure for the Juvenile Court governs discovery and disclosure in delinquency proceedings.  Pursuant to Rule 16(B)(1), within 10 days of the advisory hearing, the State is required to make available, as relevant here, a "list of all papers, documents, photographs or tangible objects which the prosecutor will use at the adjudication hearing, and upon further written request shall make available to the juvenile for examination, testing and reproduction any specified items contained in the list."   The State complied with Rule 16, and Ismael cites no legal authority applying Rule 15.8's materially different provisions for adult criminal prosecutions to this delinquency proceeding.  *See* Ariz. R.P. Juv. Ct. 1 ("These rules govern the procedure for all matters in the juvenile court, including delinquency . . . .").

**¶9**          The record supports the juvenile court's finding that the defense knew of the State's intent to use the challenged evidence but did not take steps to promptly obtain it.  Under these circumstances, the court did not abuse its discretion by permitting the State to use the evidence at the adjudication hearing.

---

[1] Contrary to the assertion in the opening brief, the State's disclosure statement is part of the record on appeal.

## II.    Confrontation Clause

¶10        The Confrontation Clause bars admission of testimonial statements unless the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). In *Davis v. Washington*, 547 U.S. 813 (2006), the Court reviewed two companion cases, concluding in one (*Davis*) that a domestic violence victim's "frantic" statements in response to a 911 operator's questions were not testimonial, whereas in the second case (*Hammon*), a domestic battery victim's written statements given during a post-incident investigation were testimonial. In *Davis,* the Court observed, the victim was speaking about events as they were occurring, rather than describing past events. *Id.* at 827. The purpose of the victim's statements "was to enable police assistance to meet an ongoing emergency." *Id.* at 828. The Court contrasted *Hammon,* where the challenged statements were "part of an investigation into possibly criminal past conduct," no emergency was in progress, and "the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." *Id.* at 829–30. The Court concluded:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822; *see also King*, 212 Ariz. at 378, ¶ 30 (911 calls made "for the primary purpose of identifying a suspect or reporting evidence in an alleged crime that has already occurred will usually be testimonial.").

¶11        Here, the 911 caller reported ongoing criminal activity that arguably did not rise to the level of an emergency. The caller stated that "some kids" were acting suspiciously, banging on and kicking a vehicle, and "burning rubber." But even assuming *arguendo* that the 911 call was testimonial because the caller was not describing an ongoing emergency, its admission was harmless beyond a reasonable doubt. *See State v. Armstrong*, 218 Ariz. 451, 460, ¶ 33 (2008) (harmless error analysis applies to Confrontation Clause violations); *State v. Moody*, 208 Ariz. 424, 457,

¶ 132 (2004) (error is harmless beyond a reasonable doubt if appellate court concludes error did not affect verdict).

**¶12**        The 911 caller neither identified Ismael nor provided information relevant to the charge before the court: theft of means of transportation. The caller instead reported conduct amounting to reckless driving and criminal damage. More fundamentally, during his recorded police interview, Ismael admitted being in the Honda and driving it with knowledge it had been stolen. He said "they took the car" from an apartment complex and had it for "three days straight." He also admitted witnessing the vehicle being started with a flat-head screwdriver. Ismael's admissions established the elements of the charged offense, *see* A.R.S. § 13-1814(A)(5) ("A person commits theft of means of transportation if, without lawful authority, the person . . . [c]ontrols another person's means of transportation knowing or having reason to know that the property is stolen."), rendering any arguable error in admitting the 911 call harmless as a matter of law.

**¶13**        As for Ismael's hearsay objection to the 911 call, the State argued at the adjudication hearing that the caller was reporting a "present sense impression" — an exception to the hearsay rule. Ariz. R. Evid. 803(1). The court did not abuse its discretion in overruling the hearsay objection on this basis. *See State v. Damper*, 223 Ariz. 572, 576, ¶ 16 (App. 2010) (a statement falls within present sense impression exception if it describes or explains an event and is "made while the declarant was perceiving the event"). Moreover, as with the Confrontation Clause argument addressed *supra*, any arguable error in the evidentiary ruling would be harmless beyond a reasonable doubt.

## CONCLUSION

**¶14**        For the foregoing reasons, we affirm Ismael's delinquency adjudication.

