NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SARAH ISABEL ROMNEY, *Appellant.*

No. 1 CA-CR 16-0326
FILED 6-15-2017

Appeal from the Superior Court in Maricopa County
No. CR 2014-132330-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

---

D O W N I E, Judge:

¶1        Sarah Romney appeals her conviction and sentence for manslaughter.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

¶2        While responding to a 911 call about a vehicle rollover, Officers Buckwalter and Aldridge received conflicting reports about the number of passengers involved, with some information suggesting two people might still be trapped in the vehicle. Upon arriving at the scene, the officers saw a car off the roadway on its roof; Romney and D.H. were outside the vehicle.  After a brief search for other occupants, Aldridge asked D.H. several questions, including who had been driving and whether D.H. was wearing his seat belt.  D.H. stated that Romney was driving and that he had been wearing his seat belt.  In a separate interview, though, Romney told Buckwalter that she was not driving.[2] Romney and D.H. were transported to the hospital.

¶3        Officers determined that the driver's seat belt "was locked in an unused position and the passenger's was locked in a used position." This indicated that, at the time of the collision, the driver's seat belt was not in use, while the passenger was wearing the seat belt. D.H. had marks indicative of wearing a seat belt, including a "distinct mark across his abdomen" that "was consistent with the size, width, [and] direction of a lap belt of a seat belt."

---

[1]        We view the facts in the light most favorable to upholding the jury's verdict. *State v. Alvarez*, 213 Ariz. 467, 468, ¶ 3 (App. 2006).

[2]        Romney later told Aldridge and a detective she did not know who was driving.

¶4 At the hospital, officers learned that both Romney and D.H. had alcohol in their systems and decided at that point "to determine who the driver was and who it wasn't because we have a crime involved." Officers could not speak with D.H. because he was intubated. Romney was uncooperative. A search warrant was obtained to draw Romney's blood. Testing revealed a blood alcohol content ("BAC") of .229.[3]

¶5 D.H. died several days later. Romney was charged with manslaughter.

¶6 Romney moved to preclude the admission of D.H.'s statements to Aldridge. The court deferred ruling on the motion until trial. During trial, outside the jury's presence, Aldridge testified about his conversation with D.H. The court ruled that D.H. was "very upset and in pain and appeared to be very affected by what had just occurred" and that his statements qualified as excited utterances. The court further found that a short period of time elapsed between the accident and the questioning, that the incident "was not subject to a criminal investigation" when Aldridge spoke with D.H., that the officer needed "to investigate and find out what happened," and that D.H.'s statements were not testimonial. Aldridge thereafter testified before the jury about his conversation with D.H.

¶7 The jury found Romney guilty of manslaughter. We have jurisdiction over her timely appeal pursuant to Arizona Revised Statutes section 13-4033(A)(1).

## DISCUSSION

¶8 Romney contends the admission of D.H.'s statements at trial violated her rights under the Confrontation Clause of the Sixth Amendment. We review alleged Confrontation Clause violations *de novo*. *State v. King*, 212 Ariz. 372, 375, ¶ 16 (App. 2006).

¶9 The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Nontestimonial statements include those "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an

---

3 D.H.'s BAC was .045.

ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). A statement is testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

¶10 When officers arrived at the scene, there was "a lot of activity," with medical personnel and concerned citizens present, as well as emergency vehicles and traffic control issues. The officers' "first concern" was to determine who was involved in the rollover. Aldridge spoke with D.H. within five minutes of his arrival. The conversation occurred on an embankment where D.H. was receiving medical attention. Aldridge had no indication at that point that alcohol was a factor in the accident. He was attempting to determine what happened, who might need help, and whether others were involved or injured. Aldridge testified:

> Well, initially I asked [D.H.] kind of a general question. I always ask when you come upon a collision, you know, what happened. He said that they had gone off the road.
>
> And then I started asking him some specific questions. I asked him who was driving the car. He said that Miss Romney was driving the vehicle.
>
> I asked him if he remembered why the vehicle left the roadway. He said he didn't remember why the vehicle left the roadway.
>
> I asked him if he was wearing a seat belt. He said he was wearing his seat belt.
>
> . . .
>
> I asked him what the purpose of their trip was for coming down south, and he said that they were coming down from Snowflake or Taylor area to celebrate.
>
> And I asked what his relation was to the woman occupant. He said that she was his girlfriend. I asked him how long they'd been dating. He said they'd been dating about three years.

> These questions were asked intermittently because medical was attending to him at the same time because he was complaining of pain in his midsection and also difficulty breathing. So, as I would ask him a question, medical would ask him a question. We never step on each other's toes, but that way I can still conduct my investigation, try to figure out what happened, and they can still get the pertinent information.

Aldridge testified that when he spoke with D.H., he had "no indication he might have been DUI or there might have been some mitigating criminal circumstances in the collision."

¶11         Based on the evidence presented, the superior court properly ruled that D.H.'s statements at the scene were nontestimonial. Aldridge was not aware of any criminal implications associated with the accident and did not know that either D.H. or Romney had been drinking. The court could reasonably conclude that the officer's primary purpose in questioning D.H. was to determine the proper law enforcement response to the ongoing emergency situation, not to gain information aimed at criminal prosecution. *Cf. Davis*, 547 U.S. at 832 (Various exigencies at the scene "may *often* mean that 'initial inquiries' produce nontestimonial statements.").

**CONCLUSION**

¶12         For the foregoing reasons, we affirm Romney's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED: AA