307 P.3d 983

**STATE of Arizona, Appellee,**

v.

**Martell Darren FRANKLIN, Appellant.**

**No. 1 CA–CR 12–0157.**

Court of Appeals of Arizona, Division 1, Department A.

July 11, 2013.

Thomas C. Horne, Arizona Attorney General By Joseph T. Maziarz, Chief Counsel, Criminal Appeals/Capital Litigation Division and Linley Wilson, Assistant Attorney General, Phoenix, for Appellee.

James J. Haas, Maricopa County Public Defender By Charles R. Krull, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

OROZCO, Judge.

¶ 1 Martell Darren Franklin (Defendant) appeals his convictions and sentences for disorderly conduct, a class six felony; assault, a class one misdemeanor; and unlawful imprisonment, a class six felony. Defendant alleges that the trial court erred when it admitted

hearsay interview statements under the forfeiture by wrongdoing exception of Arizona Rule of Evidence 804(b)(6).[1] He also alleges that admitting those statements violated his right to confront his accuser under the Sixth Amendment to the United States Constitution. We find that the trial court did not err and therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In July 2011, Defendant was arrested after Glendale Police Department officers responded to a fight. After S.L. (Victim) arrived at the hospital, Officer A. contacted her. Victim was visibly upset and had sustained noticeable injuries, but she responded to Officer A.'s questions. Officer A. electronically recorded the ten to fifteen minute interview. During the interview, Victim described her version of the events and identified Defendant as the individual responsible for her injuries.

¶ 3 The State charged Defendant with one count of aggravated assault, one count of assault, and one count of unlawful imprisonment. As part of his conditions of release, Defendant was "not to initiate contact of any nature" with Victim. The record indicates that Defendant did not post bond, and he remained in custody until his trial date.

¶ 4 Beginning in late October 2011, Victim became uncooperative with the State's investigation. She would not answer or return any of the phone calls placed by her victim advocate. The State requested jail call records for Defendant and discovered that between October 25, 2011 and November 30, 2011, Defendant attempted to contact Victim by telephone 109 times and spoke to her fifty-eight times. After Victim was subpoenaed to attend Defendant's trial, she called her advocate asking what would happen if she did not testify or refused to attend the trial.

¶ 5 After learning that Defendant had been contacting Victim, the State moved for a forfeiture by wrongdoing hearing. Although Victim was subpoenaed to attend Defendant's trial on December 11, 2011, she did not appear. The trial was reset for the following day, and a warrant was issued for her arrest. The next day, Victim again failed to appear.

¶ 6 On December 13, 2011, a pretrial evidentiary hearing was held addressing the State's forfeiture by wrongdoing motion. During the hearing, the State argued Victim's hearsay interview statements that she made to Officer A. should be admitted because Defendant, during the jail calls, had engaged in wrongdoing that was intended to, and did, procure the unavailability of Victim at trial. After taking the matter under advisement, the trial court found by a preponderance of the evidence that Defendant engaged in "chicanery," reflective of the "abhorrent behavior which strikes at the heart of the system of justice itself." As a result, Victim's interview statements were admitted at trial.

¶ 7 A jury convicted Defendant of one count of disorderly conduct,[2] one count of assault, and one count of unlawful imprisonment. The trial court sentenced Defendant to time served for the assault conviction. In addition, it sentenced Defendant to 3.75 years' imprisonment for the other two counts, to be served concurrently.

¶ 8 Defendant timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 (2003), 13–4031 (2010), and –4033.A.1 (2010).

## DISCUSSION

¶ 9 Defendant contends that the trial court abused its discretion when it admitted Victim's hearsay statements pursuant to Rule 804(b)(6) because admitting the statements violated his Sixth Amendment right to confrontation. We disagree.

---

1. Due to material revisions of the rule, we cite to the version in effect during Defendant's 2011 trial and effective until January 1, 2012. However, the revisions would not change the outcome of this case.

2. Although the State charged Defendant with aggravated assault, the jury only found Defendant guilty of the lesser-included charge of disorderly conduct.

¶ 10 Rulings regarding the admissibility of hearsay evidence are reviewed for an abuse of discretion. *State v. Bronson,* 204 Ariz. 321, 324, ¶ 14, 63 P.3d 1058, 1061 (App. 2003). Asserted Confrontation Clause violations, however, are reviewed de novo. *Id.*

¶ 11 The Confrontation Clause of the Sixth Amendment guarantees an accused the right to confront witnesses. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." [3] *Crawford v. Washington,* 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The forfeiture by wrongdoing doctrine is a common law exception to the constitutional right of confrontation, *Giles v. California,* 554 U.S. 353, 359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), and has been briefly discussed by Arizona courts. *See State v. Prasertphong,* 210 Ariz. 496, 502, ¶ 24, 114 P.3d 828, 834 (2005) (stating that the rule of forfeiture by wrongdoing "extinguishes confrontation claims on essentially equitable grounds" (quoting *Crawford,* 541 U.S. at 62, 124 S.Ct. 1354)); *State v. King,* 212 Ariz. 372, 380 n. 5, ¶ 37, 132 P.3d 311, 319 n. 5 (App. 2006) (noting that courts recognize the forfeiture by wrongdoing analysis); *State v. Valencia,* 186 Ariz. 493, 498, 924 P.2d 497, 502 (App.1996) (declaring defendant cannot assert Confrontation Clause and hearsay protections if waived by misconduct such as violence).[4]

¶ 12 After the federal codification of the forfeiture by wrongdoing doctrine, the Arizona Supreme Court revised the Rules of Evidence and adopted language identical to its federal counterpart. *See* Fed.R.Evid. 804(b)(6). Under Arizona's Rule 804(b)(6), statements "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness" are not excluded as hearsay. There are four factors to consider when determining whether to apply Rule 804(b)(6). We address each of them in turn.

### A. Witness Unavailability

¶ 13 Pursuant to Rule 804(a)(5), witness unavailability arises in situations where the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." In this case, the Victim was unavailable because she failed to attend trial despite the State serving her with a subpoena and issuing a warrant for her arrest.

### B. Wrongdoing

¶ 14 In order to fall within the forfeiture exception, the defendant's conduct must constitute a wrongdoing. Ariz. R. Evid. 804(b)(6). A "wrongdoing" under the forfeiture exception generally entails "some wrongful act on the part of the defendant." *Steele v. Taylor,* 684 F.2d 1193, 1201 (6th Cir.1982) (persuasion and control); *State v. Hallum,* 606 N.W.2d 351, 358 (Iowa 2000) ("encouraging and influencing" the witness not to testify); *Commonwealth v. Edwards,* 444 Mass. 526, 830 N.E.2d 158, 168, 170 (2005) (murder, threats, intimidation or "collusion with a witness to ensure that the witness will not be heard at trial"); *Gonzalez v. State,* 195 S.W.3d 114, 117 (Tex.Crim.App. 2006) (chicanery).

¶ 15 While a criminal act is not necessary to invoke the doctrine, *see* Fed.R.Evid. 804, Advisory Committee Notes, 1997 Amendments, witness tampering is a classic form of wrongdoing that can lead to forfeiture. *See Giles,* 554 U.S. at 366, 128 S.Ct. 2678 (noting that prior to 1985, courts never "invoked forfeiture outside the context of deliberate witness tampering"); *Edwards,*

---

**3.** Both parties have conceded that Victim's statements were testimonial.

**4.** We note the distinction between forfeiture and waiver. Waiver of a right requires "that it be made knowingly ... and that it be intentional." *State v. Conroy,* 168 Ariz. 373, 376, 814 P.2d 330, 333 (1991). Forfeiture deals with "severe misconduct or a course of disruption aimed at thwarting judicial proceedings." *State v. Hampton,* 208 Ariz. 241, 244, ¶ 8, 92 P.3d 871, 874 (2004) (forfeiting right to counsel). We apply the forfeiture analysis because Defendant intended to thwart judicial proceedings by procuring Victim's absence from trial.

830 N.E.2d at 169 (criminal act of witness tampering triggers forfeiture). Defendant argues that the wrongdoing must be in the form of some type of threat, request or directive. We find no such limits in the law— any form of witness tampering can constitute a "wrongdoing" for purposes of invoking the forfeiture exception under Rule 804(b)(6).

¶ 16 Pursuant to A.R.S. § 13–2804.A.3 (2010), "[a] person commits tampering with a witness if such person knowingly induces a witness in any official proceeding or a person he believes may be called as a witness to . . . [a]bsent himself from any official proceeding to which he has been legally summoned." Inducement consists of "persuading another person to take a certain course of action." Black's Law Dictionary 845 (9th ed.2009).

¶ 17 In the transcribed portions of the jail calls that took place between October 27, 2011 and November 2, 2011, a few of the relevant portions of Defendant's discussions with Victim provide:

October 27, 2011 [5]

Defendant: uh, basically man, if—if—if the person don't show up, man, they're gonna have to let me go—they' 11 have to drop the charges.

Victim: Yeah, and that person gets in trouble.

Defendant: No they don't. Trust me. I talked to my lawyer, right, and my lawyer said this. My lawyer said—my lawyer said all—my lawyer said all she got to do is call the—to the prosecutor's office and tell the prosecutors that she wants to drop charges, and they'll drop them.

. . .

November 1, 2011

Defendant: Oh what might happen is my lawyer's like they might try to subpoena her [ ], you know what I'm saying? And make her come. And if they don't and— and—and if the subpoena don't work I mean they might try to subpoena her, you know what I'm saying? She was like—I was like well ain't that a miss—he was like yeah that's a misdemeanor. She was like nine times out of 10 she was like they

don't—they—they're not gonna go all the way down to old girl house and swoop her up and try to mash her down to the court, you know what I'm saying? They—they don't do that. It's a misdemeanor, you know what I mean? The only—the only time they, um, come to people's houses for felony warrants, not—not misdemeanor warrants. But I had like—like I figure though, you know what I'm saying, tell old girl go over her brother house or something, you know what I mean? I'll just wait till it get close. I'll just wait till it get close to, um, wait till I get closer, um, wait till I get real close and then so then you know what I mean? See what's up. But like I say, on the day—on the day all that shit happened, old girl she just go over her brother house, you know what I mean? If—if—if I have to-if—if I have to stay that long though.

. . .

November 2, 2011

Defendant: There had to be another warrant on top of that 'cause most misdemeanor warrants are—you—you pay a fine for those, you know what I'm saying? . . . It's just like—it's like if old girl didn't show up, she'll have like a $200 fine. You know what I mean?

. . .

Defendant: that shit is just a misdemeanor warrant, man.... What you should do is like on—on Sunday on the 11th, go over to your brother house. (Unintelligible) for like two weeks.

¶ 18 The October 27 transcript reflects that Defendant believed his case would be dismissed if Victim called Defendant's attorney to drop the charges. Defendant relayed some version of that information on at least five different occasions during his first telephone contact with Victim. Although Defendant did not directly request that Victim proceed in a certain way, the frequency with which these various suggestive statements were made during this particular phone call and the fact that they were said to the person who was to actually carry out the

5. We have used the original spelling, grammar and language from transcripts of the jail calls as

contained in the State's Supplement to Motion for Forfeiture by Wrongdoing Hearing.

action and included the potential outcome should Victim proceed the way Defendant proposed, all indicate Defendant's purpose. Furthermore, these statements amounted to influential and controlling conduct designed to persuade Victim not to appear at trial to testify against Defendant.

¶ 19 Moreover, in the November 1 call, Defendant stated that Victim may be subpoenaed to "make her come" and "if the subpoena don't work," a warrant may be issued for her arrest. Although the context is not entirely clear, in at least two different portions of that statement, Defendant told Victim to stay with her brother, presumably to avoid arrest. The context becomes clearer when, in the November 2 conversation, Defendant stated that Victim would merely pay a fine as a result of violating the subpoena and resulting warrant and that she should stay at her brother's house for two weeks.

¶ 20 We conclude that the subpoena and warrant referred to in these discussions were to procure Victim's testimony against Defendant at trial. In the November discussions, Defendant referred to Victim's warrant as "just" a misdemeanor warrant and downplayed the importance by indicating that she would not be arrested for violating such a warrant. Furthermore, Defendant stated that Victim would be required to pay "like a $200 fine." Defendant's language indicates that he was encouraging Victim to violate the subpoena by minimizing the severity of the penalty associated with the violation. Defendant's conduct, at the very least, was a persuasive and coercive effort focused on encouraging Victim not to testify.

¶ 21 In the end, regardless of whether the discussions were moments of encouragement, control, collusion or chicanery, we agree with the trial court that all of these exchanges had the overall objective of inducing Victim to avoid testifying at trial. Thus, Defendant's discussions amounted to the criminal act of witness tampering and a "wrongdoing" for purposes of the forfeiture exception.

### C. Engaged or Acquiesced

█ ¶ 22 Defendant must have also engaged in, or acquiesced to, the witness tampering. Ariz. R. Evid. 804(b)(6). To acquiesce means "[t]o accept tacitly or passively." Black's Law Dictionary 26 (9th ed.2009). Similarly, engaging involves taking part or involving oneself in the conduct. *Id.* at 608.

¶ 23 "The doctrine is based on the principle that '*any* tampering with a witness should once [and] for all estop the tamperer from making any [Confrontation Clause] objection based on the results of his own chicanery.' " *Gonzalez*, 195 S.W.3d at 117 (quoting 5 John H. Wigmore, *Evidence* § 1406, at 219 (Chadbourn rev.1974)) (emphasis added). Therefore, "any" tampering at any point during the conversations would suffice to limit Defendant's ability to object. *See id.* As a result, we agree with the trial court's finding that in speaking with Victim more than fifty times, Defendant engaged in wrongdoing for purposes of Rule 804(b)(6).

### D. Intended to, and Did, Procure Unavailability

█ ¶ 24 Next, Defendant must have intended to procure, and actually procured, Victim's unavailability as a result of the witness tampering. *See* Ariz. R. Evid. 804(b)(6). Knowingly inducing a person to avoid attending trial under A.R.S. § 13–2804.A fits within conduct designed to deliberately cause unavailability under Rule 804(b)(6). Put another way, the purpose of tampering with a witness in this context is to intentionally procure that witness's unavailability. Therefore, we agree with the trial court's finding that Defendant's actions were intended to procure Victim's unavailability.

¶ 25 Defendant argues that because Victim indicated she would not testify, the forfeiture exception should not apply to Defendant's actions. However, because Victim's unwillingness to cooperate began at approximately the same time that Defendant began to make telephonic contact with Victim, the trial court could properly infer that Defendant's tampering did procure Victim's eventual absence from trial. Therefore, because Defendant's actions are clearly within the confines of Rule 804(b)(6), the trial court correctly ruled that Victim's interview statements survive Defendant's Confrontation Clause objections.

## CONCLUSION

¶ 26 For the foregoing reasons, we affirm Defendant's convictions and sentences.

CONCURRING: PETER B. SWANN, Judge and ROBERT C. HOUSER, Jr. Judge Pro Tempore.*