NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOHN FITZGERALD GAYLES, *Appellant.*

No. 1 CA-CR 22-0493
FILED 3-7-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-136388-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge D. Steven Williams delivered the Court's decision, in which Presiding Judge Daniel J. Kiley and Judge Kent E. Cattani joined.

---

**W I L L I A M S**, Judge:

¶1   Defendant John Fitzgerald Gayles appeals his convictions and sentences for, among other things, shooting his girlfriend ("Mia")[1] and narrowly missing her teenage son. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2   Gayles, a prohibited possessor, lived with Mia, their infant child, and Mia's two other children (ages seventeen and eleven).

¶3   One summer night in 2021, Gayles and Mia began arguing. When Gayles tried to leave with the couple's child, the argument quickly escalated. Mia called her parents, who lived close by, for help. During the phone call, Gayles was heard saying, "I'll kill all you motherfuckers." At some point, Gayles grabbed a gun and pointed it at Mia. The eleven-year-old, who was home at the time, reached for a knife to try to protect himself and his mother. Gayles pushed and punched Mia, who pulled Gayles' hair and bit him.

¶4   The melee continued outside as others arrived, including Gayles' mother, who was dropping off Mia's seventeen-year-old son, Gayles' own teenage son (who did not live with the couple), and a teenage friend, who were returning from basketball practice. The seventeen-year-old saw his mother getting punched and assaulted, so he ran and punched Gayles in the face. Gayles pulled out his handgun and fired off three or four rounds. The seventeen-year-old heard a bullet go by his head. One of the bullets struck Mia near her left hip. Before fleeing, Gayles told Mia it was her fault he shot her.

¶5   Mia called 911, as did her parents who arrived at the house just minutes later. Within seven minutes of the shooting, police arrived. Officers immediately spoke with Mia, who was "crying," "stuttering her

---

[1] We use a pseudonym to protect the victim's privacy. *See* Ariz. R. Sup. Ct. 111(i).

words," "visibly upset," and "breathing heavily," all while lying on the ground with a neighbor trying to attend to her. Mia's two sons, who were also shook up from the event, spoke with officers as well. Mia was transported to the hospital. Once there, officers continued speaking to her while hospital staff attended to her.

¶6        Three weeks after the shooting, police found and arrested Gayles. The State charged him with four counts of aggravated assault (each a Class 3 felony), one count of misconduct involving weapons (a Class 4 felony), two counts of endangerment (each a Class 6 felony), one count of unlawful discharge of a firearm (a Class 6 felony), two counts of misdemeanor assault, and one count of misdemeanor endangerment.

¶7        After his arrest but before trial, Gayles contacted Mia from jail nearly two thousand times by phone, video conference, and text message. Among other things, Gayles told Mia that the State would be forced to dismiss his charges if nobody participated in the prosecution against him. Just four days after Gayles first contacted Mia from jail, she told police officers she did not want to prosecute. Thereafter, the State had difficulty reaching her or her children to serve a subpoena compelling their testimony at trial.

¶8        The State moved *in limine* to introduce through third party witnesses various statements made by Mia and her children. Following an evidentiary hearing, and over Gayles' objection, the trial court granted the State's motion, finding that Gayles had wrongfully caused Mia and her eleven-year-old son's unavailability to testify at trial. Under the forfeiture by wrongdoing doctrine, the court informed it would allow the admission of various out-of-court statements because of Gayles' inappropriate witness tampering. *See* Ariz. R. Evid. ("Rule") 804(b)(6). The court also explained that several statements made to officers *at the scene* would be admitted as "excited utterances, [] regardless of the forfeiture ruling." *See* Ariz. R. Evid. 803(2).

¶9        Neither Mia, nor her children, appeared or testified at trial. Nevertheless, the trial court allowed the State to question officers about out-of-court statements each victim made.

¶10        The jury convicted Gayles of seven felonies and three misdemeanors. After an aggravation hearing, the court sentenced Gayles to 16.5 years' imprisonment on the felony convictions (comprised of varying lengths of concurrent and consecutive prison terms) and to time served on the misdemeanors.

¶11 After the trial court denied his motion for a new trial, Gayles timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1)-(2).

## DISCUSSION

### I. Admission of Testimony - Excited Utterance Exception

¶12 Gayles argues the trial court improperly admitted Mia's statements, as well as the statements of her two older children, made to officers at the scene. He asserts the statements were not made "while in an excited state," and thus should not have been admitted under the excited utterance exception to the rule against hearsay. Asserting the challenged statements were testimonial, Gayles also argues that their admission, absent his opportunity to cross-examine the declarants, violated his Sixth Amendment Confrontation Clause rights.

¶13 Hearsay, although generally inadmissible under Rule 802, is admissible as an "excited utterance" under Rule 803(2) if it "relat[es] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." For this exception to the rule against hearsay to apply, "(1) [t]here must be a startling event[,] (2) [t]he words spoken must be spoken soon after the event so as not to give the person speaking the words time to fabricate[,] [and] (3) [t]he words spoken must relate to the startling event." *State v. Thompson*, 169 Ariz. 471, 473 (App. 1991). The trial court must consider the "totality of the circumstances," including "the length of time between the event and statement, the physical and emotional condition of the declarant, and the nature of the offense." *State v. Cabrera*, 250 Ariz. 356, 359, ¶ 9 (App. 2021) (internal quotation omitted).

### A. Mia's Statements at the Scene

¶14 We typically review evidentiary rulings for an abuse of discretion, *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006), but when a claim is not raised in the trial court, we will not reverse unless the court committed fundamental, prejudicial error, *State v. Escalante*, 245 Ariz. 135, 140, ¶ 12 (2018). Gayles did not object to *all* of Mia's statements made to officers at the scene, instead making only a *single* hearsay objection at trial well into an officer's answer to the question: "What did [Mia] tell you happened?" In any event, Gayles' argument fails under either an abuse of discretion or a fundamental error standard of review.

¶15　　　　The record supports the court's finding that Mia's statements to officers shortly after the shooting were excited utterances. Within minutes of being dispatched, officers arrived at the scene. They found Mia injured, lying on the ground, visibly upset, stuttering, and breathing heavily, *supra* ¶ 5. It was in that state that Mia spoke to police. Because the record shows that Mia had just been shot and appeared to still be under the stress of the shooting when speaking with officers, Gayles has failed to show the court abused its discretion, much less committed fundamental error, by admitting Mia's statements to officers under the excited utterance exception.

### B.　　The Seventeen-Year-Old's Statements

¶16　　　　Gayles did not object to the admission of the seventeen-year-old's statements at trial. Accordingly, we will reverse only if the court committed fundamental, prejudicial error. *Escalante*, 245 Ariz. at 140, ¶ 12.

¶17　　　　One officer testified that he spoke to the teenager about seven minutes after the shooting. The officer recounted that the teenager was "clearly upset," "talking a little bit louder," "shaking," and "very concerned about his mother." Because the record supports a finding that the teenager was still under the stress of the shooting when speaking with officers, Gayles has failed to show the court committed fundamental, prejudicial error by admitting the teenager's statements.

### C.　　The Eleven-Year-Old's Statements

¶18　　　　It is not clear whether Gayles objected at trial to *all* of the eleven-year-old's statements made to officers at the scene, because two of the three objections Gayles made did not specify on what grounds he was objecting, and the remaining objection related only to one of the statements. But, again, whether we review for an abuse of discretion or fundamental error, the outcome is the same.

¶19　　　　The record shows that when speaking to officers at the scene, the eleven-year-old "was very upset," the shooting event "had just taken place," and the boy was "nervous and excited and talking very rapidly." One officer testified he arrived approximately eight minutes after the shooting and spoke with the boy "soon after arrival." The officer testified the boy was "pretty stressed . . . like he was having some time trying to catch his breath" and "wasn't really standing still when I was speaking to him." On this record, Gayles has failed to show the court committed fundamental error, or abused its discretion, by admitting the boy's statements as excited utterances.

### D. Confrontation Clause Rights

**¶20** Gayles asserts the trial court violated his constitutional rights under the Confrontation Clause by admitting the challenged statements when he had no opportunity to cross-examine the declarants at trial.

**¶21** We review alleged Confrontation Clause violations *de novo*, *State v. Bronson*, 204 Ariz. 321, 324, ¶ 14 (App. 2003), but apply fundamental, prejudicial error review when the issue of confrontation is raised for the first time on appeal, *State v. Larin*, 233 Ariz. 202, 208, ¶ 14 (App. 2013). Gayles did not object to these excited utterance statements on Confrontation Clause grounds in the trial court until his motion for new trial, so we review for fundamental, prejudicial error only. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005).

**¶22** The Confrontation Clause guarantees an accused the right to confront witnesses, U.S. Const. amend. VI, and pertains primarily to testimonial hearsay statements. *See Crawford v. Washington*, 541 U.S. 36, 53 (2004). Testimonial statements are made with the primary purpose of pursuing a criminal prosecution, while non-testimonial statements are those made for exigent safety, security, or medical concerns, such as "to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006). To determine whether a statement is testimonial, the court must look at the surrounding circumstances and whether the statements were made to further investigate ongoing threats to the police or public. *See Michigan v. Bryant*, 562 U.S. 344, 374–76 (2011).

**¶23** Gayles asserts the challenged statements were testimonial because the "officers [were] obtaining information for an investigation which they underst[ood] could result in criminal charges and a trial." But statements made to seek help or assist in investigating an ongoing threat to the public are non-testimonial. *See State v. Alvarez*, 213 Ariz. 467, 472, ¶¶ 17, 18 (App. 2006) (categorizing statement as non-testimonial because its main function was to get help, not "to implicate an accused at a later judicial proceeding"); *see also State v. Damper*, 223 Ariz. 572, 575, ¶ 10 (App. 2010) (explaining statements to police are non-testimonial when the primary purpose is to enable police assistance to meet an ongoing emergency).

**¶24** Gayles fled the scene after the shooting, making him an ongoing threat to the public. Viewed within the context of the surrounding circumstances, statements made by Mia and her sons at the scene focused, in part, on assisting police with an ongoing emergency because Gayles had fled and Mia needed medical attention. Regardless, the trial court admitted

*all* of Mia's and the eleven-year-old's statements under the forfeiture by wrongdoing doctrine. And as explained, *infra* ¶¶ 26–30, Gayles forfeited his constitutional right to confront Mia or the eleven-year-old.

¶25 As to the seventeen-year-old's statements, even if, *arguendo*, some were testimonial in nature, his statements were cumulative to Mia's and the eleven-year-old's statements, all of which were properly admitted into evidence. Thus, Gayles was not prejudiced. *State v. Williams*, 133 Ariz. 220, 226 (1982) (the "erroneous admission of evidence which was entirely cumulative constitute[s] harmless error."); *see also State v. Gertz*, 186 Ariz. 38, 42 (App. 1995) (error is harmless if, beyond a reasonable doubt, the error did not affect or contribute to the verdict).

## II. Admission of Testimony - Forfeiture by Wrongdoing Exception

¶26 Gayles contends the trial court improperly admitted Mia's and the eleven-year-old's statements under the forfeiture by wrongdoing hearsay exception because "the State did not sufficiently prove each prong" of the exception. Gayles also argues the challenged statements were testimonial, and therefore their admission, absent his opportunity to cross-examine the declarants, violated the Confrontation Clause.

¶27 Hearsay is admissible under the forfeiture by wrongdoing exception if "offered against a party that wrongfully caused—or acquiesced in wrongfully causing—the declarant's unavailability as a witness, and did so intending that result." Ariz. R. Evid. 804(b)(6). Under this exception, there must be: (1) an unavailable declarant; (2) a wrongdoing of witness tampering; (3) a defendant who engaged in, or acquiesced to, the witness tampering; and (4) a defendant who intended to procure, and actually procured, the witness' unavailability as a result of the witness tampering. *State v. Franklin*, 232 Ariz. 556, 559–61, ¶¶ 12–24 (App. 2013).

¶28 Because statements to officers at the scene were properly admitted at trial under the excited utterance exception, we need not address the court's alternative basis for admitting the statements made at the crime scene. Rather, we focus solely on the admissibility of Mia's statements to officers at the hospital.

### A. Mia's Statements at the Hospital

¶29 At trial, the court admitted statements made by Mia to officers at the hospital under the forfeiture by wrongdoing exception. After an evidentiary hearing, the court found the "State ha[d] been unable to serve [Mia]" and she was "clearly . . . unavailable." The court also found there

7

was "substantial evidence" of wrongdoing in the form of witness tampering based on Gayles' conversations with Mia—primarily admonishing her not to show up at trial so the charges against him would be dropped. The court found that Gayles "voluntarily engaged" in contacting Mia and that "her unwillingness to cooperate was the result of the contacts from the defendant." Because the record supports these findings, the court did not abuse its discretion when it admitted Mia's statements to officers under the forfeiture by wrongdoing exception.

## B.    Confrontation Clause Rights

**¶30**        A defendant's right to confront witnesses under the Sixth Amendment is not absolute. *State v. Nieto*, 186 Ariz. 449, 454 (App. 1996). When a defendant "obtains the absence of a witness by wrongdoing," he "forfeits the constitutional right to confrontation." *Davis*, 547 U.S. at 833. Here, Gayles forfeited his constitutional right to confront Mia about her statements at the hospital by engaging in witness tampering and causing her unavailability at trial.

## CONCLUSION

**¶31**        We affirm Gayles' convictions and sentences and deny his request for a new trial.

