NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

ALINE FOUAD EL MAKARI GEBRAN, *Petitioner/Appellant*,

*v.*

GEBRAN ASSAD GEBRAN, *Respondent/Appellee*.

No. 1 CA-CV 24-0932 FC

FILED 01-28-2026

Appeal from the Superior Court in Maricopa County
No. FN2020-096189
The Honorable William R. Wingard, Judge

**AFFIRMED**

COUNSEL

Stevens & Van Cott, PLLC, Scottsdale
By Charles C. Van Cott
*Counsel for Petitioner/Appellant*

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent /Appellee*

---

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Veronika Fabian joined.

---

**F O S T E R**, Judge:

¶1        Aline Fouad El Makari Gebran ("Wife") appeals the superior court's order adopting the family law master's ("Special Master") rulings in this divorce proceeding relating to her marriage to Gebran Assad Gebran ("Husband"). Wife challenges the denial of child support, evidentiary rulings and the division of property. This Court affirms.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        Following their marriage in 1999, Wife and Husband moved from Lebanon to the United States and had three children in common. In 2012, Wife and the three children moved to Lebanon while Husband stayed in the United States. At the time Wife petitioned for dissolution in Arizona in 2020, she and the children lived in Lebanon. In the superior court proceedings, the parties disputed three issues relevant to this appeal: (1) jurisdiction regarding child support; (2) the value of two real estate properties in Lebanon; and (3) the marital community's interest in Husband's ownership of restaurants and real estate entities.

¶3        First, on the question of the appropriate jurisdiction for determining child support, the court noted at a temporary order hearing that the children resided in Lebanon for almost ten years before proceedings began. Based on these facts, the court found Lebanon was the children's home state. The court also acknowledged that though it could order child support based on Arizona law (A.R.S. § 25-1271), it would not do so in this case because it would be "[in]appropriate to issue such an order in the absence of parenting time orders." The court noted that such orders would impact the amount of child support. After an evidentiary hearing, the Special Master recommended that determinations of child

---

[1] This Court views the facts in the light most favorable to upholding the superior court's ruling. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 283, ¶ 14 (App. 2019).

support and child custody related issues "should be resolved at the same time and by the Lebanese court." The Special Master reasoned that it would not overrule the court's previous decision not to award child support on a temporary basis.

¶4        Second, Husband faced difficulty in obtaining an appraisal for a home in Lebanon. Husband's appraiser, listed as an expert witness, resided in Lebanon and was tasked with valuing the two properties there, the Haret El Ballaneh apartment ("Ballaneh home") and the Dik El Mehdi apartment ("Mehdi home"). In October 2022, the parties filed a joint statement of discovery dispute in which Husband argued that Wife thwarted attempts to appraise the Mehdi home. He alleged his appraiser could not complete the appraisal because she felt intimidated and threatened by Wife. Husband further provided that Wife informed the appraiser "if [the appraiser] took any photos, [Wife] would sue her." In November, the court ordered Wife to allow the appraiser to complete the appraisal. Husband filed a Petition for Contempt that same month alleging Wife had blocked his appraiser from completing an appraisal on the Mehdi home, contrary to the court's order. During an oral argument regarding Wife's failure to comply with disclosure, the court denied Husband's request to admit his appraiser's report into evidence without testimony.

¶5        Meanwhile, Husband continued to struggle to obtain an appraisal on the Mehdi home. In May, Husband filed a motion with the Special Master to admit his appraiser's report without testimony. Husband stated in his motion that his appraiser feared criminal action by Wife in Lebanon. He asserted that questions relating to appraisals "can be addressed by other witnesses" and that the appraisal report met the requirements of Arizona Rules of Evidence ("Evidence Rule") 902(11) and (12). The Special Master denied Husband's motion and reasoned that, given the circumstances, it would be improper to admit evidence the trial court already denied, absent a "manifestly erroneous and unjust" finding.

¶6        Husband moved for reconsideration. He claimed that the facts presented to the trial court differed from those in his motion to the Special Master and were supported by an affidavit from Husband's attorney affirming the situation. He also claimed that admission of his appraiser's report without testimony was a hearsay exception under Evidence Rule 804(b)(6). And he argued the Arizona Supreme Court carved out an exception to the "law of the case" doctrine when there exists a substantial change in evidence to permit his request. (Citing *Dancing Sunshine Lounge v. Indus. Comm'n*, 149 Ariz. 480, 483 (1986).) The Special Master granted the motion for reconsideration and allowed Husband to use

the appraisal report without testimony. He explained that there were "important facts not before the trial court at the time of its ruling," such as the fact "that no appraisers, including [Husband's appraiser] . . . will testify for fear of being named in a criminal complaint."

¶7            Third, as to Husband's business interests, Husband asserted that they were his sole and separate property. Husband disclosed that his father gifted him a partial interest in the entity US Egg Tempe five years before the marriage. Husband asserted that his remaining five restaurant investments flowed between the gifted funds from Husband's father and US Egg Tempe, making them sole and separate property. Husband also argued various real estate parcels were his sole and separate property because his entity, Gebran Resources, LLC, ("Gebran Resources") was created before the marriage and all parcels were purchased or funded by Gebran Resources. Conversely, Wife presented evidence that Husband had 25 business entities. Wife agreed that US Egg Tempe and Gebran Resources were established before the marriage, but she contested the subsequent acquisitions and businesses arising from those two entities during the marriage. Wife claimed that Husband did not report compensation regarding US Egg Tempe from 1999 to 2020 nor did he provide documentation concerning distributions of his LLCs from 1999 to 2020. Wife also claimed Husband failed to report any gift traced from Husband's father to Husband relating to US Egg Tempe and its subsequent purchases.

¶8            After a two-day evidentiary hearing, where the formal rules of evidence were invoked under Arizona Rule of Family Law Procedure ("Family Rule") 2, the Special Master filed his report. Relevant to this appeal, the report recommended the following: (1) declining to enter a child support award, reasoning it was more appropriate for the Lebanese court to calculate after parenting time was decided; (2) awarding Husband the Arizona home and Wife the Lebanon properties; (3) calculating an equalization payment from Wife to Husband based on the value of the properties and other property; and (4) awarding Husband all of the business entities—two entities formed before the marriage, six entities that operated restaurants and two commercial real estate entities—as sole and separate property. The court adopted the Special Master's report over Wife's objection and dissolved the marriage.

4

**¶9**          Wife timely appealed and this Court accepts jurisdiction. A.R.S. § 12-120.21(A)(4).[2]

## DISCUSSION

### I.     The court properly exercised its discretion on the issue of child support.

**¶10**          Wife argues that even in the absence of parenting time orders the court could have awarded child support and failed to do so. Courts review a child support award for an abuse of discretion. *Birnstihl v. Birnstihl*, 243 Ariz. 588, 590, ¶ 8 (App. 2018). This Court adopts the superior court's factual findings unless they are clearly erroneous but reviews *de novo* legal conclusions, including statutory interpretation and jurisdictional authority. *Antonetti v. Westerhausen in and for County of Maricopa*, 254 Ariz. 364, 368, ¶ 13 (App. 2023).

**¶11**          The decision to order child support is within the court's discretion. *Simpson v. Simpson*, 224 Ariz. 224, 226, ¶ 8 (App. 2010). In a divorce proceeding, the court "may order" a parent to provide child support. A.R.S. § 25-320(A); *id.* And, if no order for child support has been entered, the court "may issue" child support when a parent seeking it resides outside the state. A.R.S. § 25-1271(A)(1). But while parents have a duty to provide reasonable support for their children, A.R.S. § 25-501(A), a court is not required to enter a child support order.

**¶12**          Here, the Special Master determined it would be "inappropriate" to order child support against the court's previous denial. Though Wife argued that the Arizona court could have determined child support, she fails to show how the court erred in not doing so. *See Simpson*, 224 Ariz. at 226, ¶¶ 8, 10. Determining an award for child support was within the court's discretion, and this Court discerns no error.

---

[2] Due to an error in the final judgment, a new Family Rule 78 judgment was issued. Mother filed a timely appeal based on the first final judgment but did not refile a notice of appeal after the new judgment. Husband filed a motion to dismiss Wife's appeal for timeliness. After review, this Court treats Wife's appeal as a special action and accepts jurisdiction because errors in the issuance of final judgment would have left Wife with no equally plain, speedy and adequate remedy for appeal. Ariz. R. P. Spec. Act. 11(e).

## II.   The Special Master properly admitted Husband's appraisals.

¶13        Wife argues the court erred in admitting the appraiser's report regarding the Mehdi home and the Ballaneh home. She claims the Special Master's ruling on Husband's motion for reconsideration was a prohibited horizontal appeal. She also claims that the admission of the appraisal without testimony violated Mother's right to cross-examine the appraiser and the report was admitted without testimony, violating Evidence Rule 803(6).

### A.   Horizontal appeal

¶14        Wife argues the court erred in admitting the appraisal report because the Special Master should not have reversed the superior court's previous denial. Wife argues Husband provided no additional information to justify the Special Master's change in position, resulting in a prohibited horizontal appeal under the "law of the case" doctrine.

¶15        The "law of the case" doctrine is a judicial policy that restrains judges from revisiting issues previously resolved within the same or higher court. *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278 (App. 1983). A "horizontal appeal" is a concept within the "law of the case" doctrine that occurs when decisions arise from the same court but with a different judge. *Id.* at 278–79. In a horizontal appeal, a party asks another trial judge to reconsider a ruling previously determined by the original judge in the same case. *Id.* Horizontal appeals are disfavored "because they waste judicial resources . . . and encourage judge shopping." *Id.* at 279. However, a horizontal appeal may be permissible when the original decision was manifestly erroneous or unjust, there exists a substantial change "in essential facts or issues," or the original decision was unaddressed, ambiguous or not decided on the merits. *Id.* (citation omitted).

¶16        Here, Husband sought to admit the appraiser's report without testimony three separate times. Husband made the first request to Judge Coury during the initial discovery dispute over the appraisals of the Ballaneh home and the Mehdi home. Husband's request followed Wife's failure to comply with the court's order requiring Wife to provide access to the Lebanon properties for an appraisal. Judge Coury denied Husband's request. Soon after, the court appointed the Special Master at the parties' request.

¶17        Husband then requested that the Special Master allow the appraiser's report be admitted without testimony. Husband alleged, and

Wife acknowledged, that Wife pursued a criminal complaint against the appraiser in Lebanon and threatened the appraiser from testifying in the evidentiary hearing. The Special Master denied this request stating that he would not revisit an issue that Judge Coury already ruled on. Husband then sought reconsideration of the Special Master's decision on the basis that Judge Coury had not been privy to information that constituted a substantial change in circumstances justifying the admission of the report without testimony. Husband argued a change in circumstances existed because he was unable to hire another appraiser due to Wife's threats to pursue legal action against any appraiser employed by Husband. The Special Master granted Husband's motion based on the changed circumstances and allowed the appraisal reports to be admitted without testimony.

¶18 Husband's motion for reconsideration was not an improper horizontal appeal. Though his motion for reconsideration asserted the same facts as his initial request to admit the appraisal reports without testimony, circumstances changed after Judge Coury's ruling. Wife's counsel at oral argument even conceded that this constituted a change in circumstance. These new circumstances were not considered by Judge Coury and therefore were not a horizontal appeal. *See Donlann v. Macgurn*, 203 Ariz. 380, 386, ¶ 29 (App. 2002) ("Generally, a judge should not reconsider a motion already decided by another superior court judge unless new circumstances are demonstrated.") (citations omitted).

B.  Admission of appraisals

¶19 Wife argues the Special Master deprived her of due process when it admitted Husband's appraisals without testimony. She asserts the court did not afford her the ability to cross-examine the appraiser and that it admitted evidence based on hearsay. *See Downs v. Scheffler*, 206 Ariz. 496, 501, ¶ 21 (App. 2003) (quoting *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 143, ¶ 43 (App. 2003)) ("Arizona has a long-favored practice of allowing full cross-examination of expert witnesses, including inquiry about the expert's sources, relations with the hiring party and counsel, possible bias, and prior opinions."). But "[u]nless the court orders otherwise, an expert may state an opinion . . . without first testifying to the underlying facts or data." Ariz. R. Evid. 705. In such circumstances, "the expert may be required to disclose those facts or data on cross-examination." Ariz. R. Evid. 705; *see* Ariz. R. Evid. 801(d)(1)(A)–(B) (a statement is not hearsay if it meets the requirements for an inconsistent statement or consistent statement and is subject to cross-examination).

*i.     cross-examination*

**¶20**        Wife asserts that her inability to cross-examine Husband's appraiser prejudiced her because "the special master had no other appraisals supporting the results reported in the Lebanon Appraisals." But the record suggests there were at least three different appraisal reports. Wife provided her initial appraisal, as mentioned by her counsel at oral argument. Husband also submitted an appraisal, which provided a substantially higher value than Wife's appraisal. Wife then sought review by the Real Estate Appraisers Syndicate, an agency that oversees public appraisers in Lebanon, and review by the Court of Urgent Matters, a judicial agency that oversees appraisals utilized in court proceedings. This review resulted in a third appraisal report. The Special Master accepted all of these reports into evidence. The Special Master recognized the lack of testimony related to Husband's appraisal and noted "the weight of that evidence may be lessened . . . but the undersigned will give the appraisal the weight it deserves." Wife was not prejudiced by this action because even assuming the Special Master erred, Husband's appraisal was admissible under a hearsay exception. *See Starkins v. Bateman*, 150 Ariz. 537, 544 (App. 1986) ("The reception of inadmissible evidence that has at some point been admitted is harmless error.").

*ii.     hearsay*

**¶21**        Generally, procedures in family law cases are relaxed and allow admission of evidence without complying with hearsay and authentication rules of evidence. Ariz. R. Fam. Law P. 2(b). But Husband timely invoked strict compliance with the Evidence Rules. Ariz. R. Fam. Law P. 2(a). Thus, in order for the court's admission of Husband's appraisal without testimony to be proper, the Evidence Rules needed to allow it.

**¶22**        This Court determines admissibility of hearsay evidence for an abuse of discretion. *State v. Franklin*, 232 Ariz. 556, 559, ¶ 10 (App. 2013). This Court will not disturb a court's ruling to admit or exclude evidence unless it is a clear abuse of discretion and the error is prejudicial. *Premier Consulting and Mgmt. Sols., LLC v. Peace Releaf Ctr. I*, 257 Ariz. 80, 90, ¶ 40 (App. 2024). A court's ruling to admit hearsay evidence will be upheld for any reason justified by the record. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985) (examining the record to determine whether grounds exist to support the court's decision, even if the trial court reached the right result for the wrong reason).

**¶23**          In his motion to admit the appraisal report, Husband argued Wife's alleged witness tampering justified admission of the report. In response, Wife asserted that the appraiser's unavailability did not qualify as a hearsay exception, including an exception under Evidence Rule 804. Wife argued her conduct did not constitute witness tampering. After the Special Master's denial of Husband's request to admit the appraisal without testimony, Husband sought its admission through a hearsay exception under Evidence Rule 804(b)(6) (statement offered against a party that wrongfully caused the declarant's unavailability).

**¶24**          Evidence Rule 804(b)(6) provides an exception to the rule against hearsay when a party wrongfully causes a declarant's unavailability. Ariz. R. Evid. 804(b)(6). The rule provides a hearsay exception for "[a] statement offered against a party that wrongfully caused-- or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result." Ariz. R. Evid. 804(b)(6). As relevant in this case, the following facts are uncontested: (1) Wife filed a criminal complaint against Husband's appraiser in Lebanon, (2) Husband's testimony regarding the Lebanon properties were the same as his appraiser's values, (3) Husband's appraiser evaluated both homes in Lebanon and (4) Husband's appraiser was absent from trial. The record in this case supports a finding that Wife caused Husband's appraiser to be absent at trial and supports admission of the report under Evidence Rule 804(b)(6). *Franklin,* 232 Ariz. at 559, 561, ¶¶ 12, 25; *see* Ariz. R. Fam. Law P. 72(h) (when parties stipulate to having a special master hear their case, "the court may not reverse a finding of fact by the special master unless it is clearly erroneous, but it must review de novo the master's conclusions of law").

### 1. *Witness unavailability*

**¶25**          A witness is unavailable when the declarant "is absent from the . . . hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance." Ariz. R. Evid. 804(a)(5). Here, Husband's appraiser would not attend any hearing to testify about the appraisal for fear of arrest. Wife admitted that she filed a criminal complaint and the criminal charges in Lebanon supported the appraiser's reasonable fear of arrest.

### 2. *Wrongdoing*

**¶26**          Wrongdoing involves "some wrongful act on the part of the [offender]." *Franklin*, 232 Ariz. at 559, ¶ 14. Though wrongdoing may be

triggered by a criminal act, the law imposes no such limitation under Evidence Rule 804(b)(6). *Id.* at 559–60, ¶ 15. Husband supported his claims of Wife's wrongdoing by highlighting her failure to comply with disclosure and the criminal charges in Lebanon. The Special Master found that Wife's actions were "unconscionable" and the "very definition of witness tampering/intimidation," supporting wrongdoing. *See id.* at 559, ¶ 14.

### 3. *Engaged or acquiesced*

**¶27** To meet the exception under Evidence Rule 804(b)(6), Wife must have engaged in or acquiesced in the wrongdoing. Ariz. R. Evid. 804(b)(6). Since the Special Master found that Wife's actions were the "very definition of witness tampering/intimidation," the record establishes this element.

### 4. *Intended to, and did, procure unavailability*

**¶28** To satisfy Evidence Rule 804(b)(6), the offender must have intended to make the declarant unavailable and must have caused that unavailability. Ariz. R. Evid. 804(b)(6). Knowingly encouraging someone to avoid appearing at trial qualifies as conduct aimed at deliberately preventing a witness from testifying. *See* A.R.S. § 13-2804(A) (defining witness tampering). Although the Special Master did not expressly find that Wife intended to and did procure the appraiser's unavailability, this Court assumes that the Special Master made that finding in order to admit the appraisal without testimony. *See Valento v. Valento*, 225 Ariz. 477, 481, ¶ 11 (App. 2010); Ariz. R. Fam. Law P. 72(h). Because Evidence Rule 804(b)(6) provided a hearsay exception to the admission of the appraisal, there was no error in admitting the appraisal.

### *iii.* Evidence Rule 803(6).

**¶29** The record shows the appraiser's report was admissible under Evidence Rule 804(b)(6). Thus, this Court need not address Wife's additional hearsay claim under Evidence Rule 803(6). *See Geyler*, 144 Ariz. at 330 ("We recognize the obligation of appellate courts to affirm where any reasonable view of the facts and law might support the judgment of the trial court. This rule is followed even if the trial court has reached the right result for the wrong reason."). This Court's finding that the record supported a hearsay exception under Evidence Rule 804(b)(6) also resolves Wife's due process claim. *See Petzoldt*, 172 Ariz. at 276. Thus, this Court discerns no error in the admission of the appraiser's report.

### III. The court properly distributed the seven entities as Husband's sole and separate property.

**¶30**      Wife argues that throughout the proceeding, Husband, nor his expert, "could account for $1.4 million" from an entity called Gebran Resources when it purchased and transferred various real estate. She contends that there was "not clear and convincing evidence" that these assets were Husband's sole and separate property. Specifically, Wife claims it was Husband's burden to establish the seven real estate holding entities as his sole and separate property. The seven entities Wife questions are: (1) The Lucky Seven; (2) Gebran and Gebran Development; (3) and the five real estate holding companies from 2015. Wife contends that because Husband has failed to account for "the initial $1.4 million that gave rise to the chain of transactions," the seven entities awarded to Husband should not have been classified as sole and separate property. Husband asserts that Wife's "narrow" appeal was not argued in the superior court and therefore waived on appeal. But because Wife objected to the Special Master's ruling that evidence of the alleged unaccounted for $1.4 million was contrary to the evidence, she did not waive her argument.

**¶31**      Husband raises Wife's failure to overcome her burden of proof in establishing Gebran Resources as community property. This Court reviews the characterization of property *de novo*. *Hefner v. Hefner*, 248 Ariz. 54, 57, ¶ 6 (App. 2019). But the division of property and factual determinations are reviewed for an abuse of discretion. *Hoobler v. Hoobler*, 254 Ariz. 130, 137, ¶ 13 (App. 2022). An abuse of discretion occurs when the court "commits an error of law in the process of exercising its discretion." *Id.* Evidence will be reviewed "in the light most favorable to upholding the judgment." *Saba v. Khoury*, 253 Ariz. 587, 590, ¶ 7 (2022).

**¶32**      A court classifies property as either separate or community at the time it is acquired. *See Nace v. Nace*, 104 Ariz. 20, 22 (1968). Property classified as separate or community maintains its classification if it is kept separate. *Id.* at 22–23. A spouse's "personal property that is owned by that spouse before marriage . . . is the separate property of that spouse." A.R.S. § 25-213(A). And "[p]roperty purchased during marriage with separate property remains such." *Nace*, 104 Ariz. at 23. But a spouse challenging the presumption of the property's classification must establish "the character of the property by clear and convincing evidence." *Hefner*, 248 Ariz. at 58, ¶ 9.

**¶33**      Here, Wife does not dispute that Gebran Resources is Husband's sole and separate property because Husband formed it before

the parties married. But Husband established The Lucky Seven and Gebran and Gebran Development during the parties' marriage. Therefore, Husband must prove he established the entities with funds that derived from his sole and separate property. *See Nace*, 104 Ariz. at 23.

**¶34** The record shows no abuse of discretion. Husband and his brother formed The Lucky Seven in 2000, after the marriage. About three years later, The Lucky Seven purchased seven parcels of land. The affidavit of property value for the seven parcels of land included various payments made at closing that were supplied by Gebran Resources, Husband's separate property. The record also indicated that The Lucky Seven purchased property in 2005. That purchase was sourced from The Lucky Seven in three installments via a cashier's check. Husband's expert reviewed settlement statements and checks and concluded that funds from The Lucky Seven and Gebran Resources funded these various purchases.

**¶35** In 2005, Husband and his brother also formed Gebran and Gebran Development. Husband's expert testified that The Lucky Seven quitclaimed its properties to Gebran and Gebran Development. At trial, Wife's expert testified that The Lucky Seven funded Gebran and Gebran Development. In 2015, Gebran and Gebran Development then sold three parcels of property and subsequently created five real estate holding companies through a Section 1031 Exchange.

**¶36** Husband traced the funds used to purchase the properties back to his separate property either through Gebran Resources or his various entities transferring property to another. *See Cooper*, 130 Ariz. at 259. Thus, because Husband's separate property remained separate, the Special Master did not err in characterizing the remaining five real estate holding entities as Husband's separate property. *See Nace*, 104 Ariz. at 23. Moreover, Wife did not present evidence to establish that the community contributed to the value of Husband's property or how Husband's tracing was error. The court did not err in awarding Husband The Lucky Seven, Gebran and Gebran Development and the five real estate holding entities. *See Cooper*, 130 Ariz. at 259.

## IV. Attorneys' fees.

**¶37** Both parties request attorneys' fees and costs on appeal under A.R.S. § 12-324 due to financial disparity. *See* A.R.S. § 12-324(A) (the Court may require a party to recover costs and expenses after consideration of the parties' financial resources). Because this determination is discretionary, this Court denies both parties' requests. *See Backstrand v. Backstrand*, 250

Ariz. 339, 347, ¶ 33 (App. 2020) (denying both parties' request under § 24-324).

## CONCLUSION

**¶38** This Court affirms the court's adoption of the Special Master's ruling.

